J. Irwin Shapiro, J.
The defendant has been indicted for
criminal possession of a stolen Cadillac automobile. He now moves to suppress said automobile,
Involved in the' disposition to be made in. this matter is a construction of subdivision 4 of section 401 of the Vehicle and Traffic Law which authorizes a police officer to demand the production of the certificate of registration of a motor vehicle for inspection and other information relative thereto, and the *451 extent of inquiry permissible under that statute. The operative facts developed upon the suppression hearing are these:
Prior to November 24, 1967, the New York State Motor Vehicle Department informed Detective George Rapp of the Auto Squad that a 1967 black Cadillac had been registered in the name of one Frank Lester of 161-01 Union Turnpike by means of a Motor Vehicle Department MV-50 form which had been reported stolen from an automobile dealer and that registration plate XL3976 was issued upon such registration. MV-50 forms are furnished by the Motor Vehicle Department solely to dealers for use by a dealer in registering an automobile sold by him in the name of the vendee.
Investigation disclosed that the registered Cadillac had been stolen on August 23, 1967, the same day on which it was .registered in defendant’s name, by means of the stolen MV-50 form. As a result of this information, Detective Rapp, on a number of occasions, visited the address given on the registration — a gas station — in unsuccessful attempts to locate the Cadillac which ha was seeking.
On November 24, 1967 Rapp and his partner again visited the gas station, and this time they saw parked thereon a 1967 blue Cadillac bearing registration plate LES-77. Since this Cadillac did not fit the description of a black Cadillac bearing license plate XL3976 that Rapp was looking for, he telephoned the Motor Vehicle Department and ascertained that plate LES-77 had been issued to Lester Frank of 160-01 Union Turnpike and that, according to that registration, that car bore serial number P-7187028. The serial number set forth on the stolen MV-50 form, however, was P-7167028 — the only difference between the two being that the third digit was a 6 instead of an 8.
Rapp and his partner then entered the gas station, identified themselves as police officers and asked for Lester Frank. Defendant acknowledged that he was that person, and Rapp told defendant that they were investigating his car and would like to take a look at it, and defendant said,' ‘ There it is, go ahead ”.[1] Rapp then raised the hood of the car and found the serial number on the motor to be P-7176403. This was a different serial number from the serial number of the car on the plate affixed to the doorpost. Thereupon Rapp informed *452 defendant that he had reason to believe that Frank was in possession of a stolen car. Rapp then advised Frank of his constitutional rights to remain silent, to an attorney, and his other rights, and he asked defendant if he would co-operate and answer questions. Defendant replied, “ Go ahead, shoot. I am over 21. I will answer ”. Defendant then stated, in answer to questions, that he had obtained the Cadillac from an unknown man who had been coming in to his place of business with that car for the previous six months; that he had paid this unknown man $5,000 in cash for the car; and that he registered the car with a part 4 stub (of the certificate of registration) he received from the seller of the car. Rapp exhibited to defendant photostats of the papers on file at the Motor Vehicle Department covering a black Cadillac and he asked defendant whether he had ever owned a black car and whether the signature on the papers which he exhibited to defendant was his. Defendant denied that he had ever owned a black Cadillac and stated that the signature on the photostat was not his.
Defendant contends that the raising of the hood of the automobile by Rapp constituted a search covered by the Fourth Amendment: that since it was done without a warrant therefor and it was not incident to an arrest, it was an unreasonable search; and that defendant’s consent thereto was not a voluntary one but was submission to superior police authority and consequently not a knowing and effective waiver of the right to be secure against an unreasonable search and seizure. These contentions are all without merit for the basic element of an unreasonable search is not present in the factual picture here presented.
I
The use of motor vehicles upon the highways or streets of the State is a privilege and not a right. (People v. Rosenheimer, 209 N. Y. 115, 120, 121; see, also, Matter of Froslid v. Hults, 20 A D 2d 498, 503.) In fact as was observed in Rosenheimer (p. 120), “ the legislature might prohibit altogether the use of motor vehicles upon the. highways or streets of the state.” Thus, if the privilege extended by .the State to operate a motor vehicle may be denied, it follows that the Legislature may circumscribe the exercise of that privilege by particular conditions. (People v. Rosenheimer, supra, p. 121.) One of the conditions which the Legislature has prescribed for the privilege of operating a motor vehicle upon the public highways of the State is the requirement, as provided in subdivision 1 of section 401 of the Vehicle and Traffic Law, that “no motor *453 vehicle ¡shall he operated or driven upon the public highways of this state without first being registered in accordance with the provisions ’ ’ of that law. Implementing that requirement, and manifestly in the proper exercise of police power by the States in regulating motor vehicles, subdivision 4 of section 401 provides as follows: ‘ ‘ Every person operating a motor vehicle or trailer registered or transferred in accordance with any of the provisions of this chapter shall upon demand of any * * * peace officer or state policeman produce for inspection the certificate of registration or the registration renewal stub, for such vehicle and shall furnish to such * * * officer or policeman any information necessary for the identification of such vehicle and its owner * * * and shall, if required, sign his name in the presence of such * * * officer or policeman as a further means of identification.” (Emphasis supplied.)
Although this statute contains no explicit provision granting power and authority to a police officer to raise the hood of an automobile in order to verify the ownership of a registered car from the serial number appearing on the motor, two considerations make it abundantly clear that instinct in the statute is the grant of such power. To begin with, to hold that absent such an express grant of power the only authorization given to the police is merely to examine the registration certificate, as provided in the first part of this statute, would frustrate the manifest purpose of the statute and render it meaningless. Obviously, the purpose of requiring the production of the registration certificate is not only to ascertain that the person in possession of it is entitled thereto but also that the vehicle itself is properly registered as provided in the statute. Unless the authority to demand a registration certificate and examine it is coupled with the power and authority to verify the accuracy of its contents, the power to demand production of the certificate is an empty and meaningless gesture. Thus, a necessary concomitant of the authority to demand production of the registration certificate is the right to verify its contents and, if such verification entails the raising of the hood of the motor vehicle to examine the serial number on the motor, then it follows that the statute includes the power and authority so to do. Secondly, such authority is in any event implicitly provided for in the statute. Not only does the statute command — as a condition, as above noted, for granting the privilege to operate a motor vehicle on the public highways — that a registration certificate shall upon demand of a peace officer be produced for inspection, but it further provides that such person “ shall furnish to such * * * officer or policeman any information necessary for the *454 identification of such vehicle and its ownér That such command rationally encompasses the right to raise the hood of the vehicle in order that ‘1 information necessary for the identification of such vehicle and its owner ” be obtained is hardly debatable.
Defendant contends, however, that since he was not physically operating the Cadillac and it was parked in the gas station when Detective Rapp confronted him with the statement that he was investigating the car and would like to take a look at it, subdivision 4 of section 401 is not applicable. While it is true that the statute speaks of a demand for identification of the motor vehicle upon the “person operating a motor vehicle”, it would seem apparent that the intent of the statute is to cover not only the person actually operating the vehicle but also anyone else who exercises dominion over a motor vehicle “ registered or transferred in accordance with any of the provisions ” of article 14 of the Vehicle and Traffic Law. Thus, in People v. Koposesky (25 A D 2d 777 [2d Dept.]), where the police stopped an automobile in which the defendant was an occupant, the court stated (p. 778) that “the arresting officer was authorized to stop the automobile and demand of its occupants the certificate of registration and other information ”. The same court made the same observation in People v. Hoffman (24 A D 2d 497), namely, that a police officer is lawfully authorized to stop an automobile and demand “ of its occupants ” the certificate and such other information as is set forth in section 401. So, too, in People v. Scianno (20 A D 2d 919), the Appellate Division of this Department said; “in our opinion, a peace officer is authorized to stop a motor vehicle and demand of its driver, or of any passenger who* claims to be its owner, the certificate of registration and the other information set forth in subdivision 4 of section 401 of the Vehicle and Traffic Law”. (Emphasis supplied.) In United States v. Bhono (256 F. Supp. 391, 393 [S. D. N. Y., 1966]), where a police officer demanded the registration and a license of the defendant who was seated in a parked car with two others, District Judge Weinfeld, citing subdivision 4 of ¡section 401 of the Vehicle and Traffic Law, observed: “ Under New York law, Officer Biordan had a clear right to require defendant to produce his license and registration, even though at the time he was not driving the Pontiac car ”.
In any event, it is indisputable that the Cadillac was operated shortly before Bapp saw it. It is reasonable to assume that it could not have come upon the gas station without having been driven there along public streets either by defendant or by his *455 authority. The Cadillac was registered in defendant’s name and he acknowledged that he owned it. On several occasions prior to November 24, Rapp’s visits to the gas station, in an attempt to locate the Cadillac which he had been informed by the Department of Motor Vehicles had been registered by means of a stolen MV-50 form, proved fruitless. The Cadillac was not there. The first time it was seen in the gas station by Rapp was on November 24. In addition, by acceding to Rapp’s request for permission to look at the car (albeit superfluous), defendant thereby exercised such dominion over the car as to bring him within the terms of the statute. Thus, there came into being, vis-a-vis Detective Rapp and defendant, the statutory authority in Rapp to inspect the Cadillac (including the raising of its hood) for the purpose of verifying its ownership.
II
In any event, even in the absence of a statute such as section 401 of the Vehicle and Traffic Law, the police would nevertheless have the power, in a case such as this, to identify the Cadillac.
It has been repeatedly held, in substance, that an automobile has the status of a house, so far as the protection of the Fourth Amendment is concerned, subject to certain limitations arising from its mobility. (Carroll v. United States, 267 U. S. 132, 153; see, also, e.g., Brinegar v. United States, 338 U. S. 160, 164; Henry v. United States, 361 U. S. 98, 104.) In Carroll it was pointedly said (p. 153): “ The guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.”
Again, in Carroll it was observed (pp. 147, 149): “The Fourth Amendment does not denounce all searches or seizures, but only such as are unreasonable. * * * On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which *456 by law is subject to seizure and destruction, the search and seizure are valid.”
Of course, here Detective Rapp had ample probable cause, from the information he had received from the Department of Motor Vehicles, to believe that the Cadillac was a stolen one.[2] He could have, in the circumstances, searched the automobile much more extensively than merely looking at the serial number on the motor to determine the true owner. What he did, he had the power to do even in the absence of a statute such as section 401. In Cotton v. United States (371 F. 2d 385, 393-394) it was pertinently said: “We have no doubt, that here, even if the mere opening of the door to look at the number was a search, it was a reasonable one. The agent had reliable information from the Las Vegas police that the car was stolen, and it was entirely reasonable for him to check the car before sending out his inquiry. It is true that he could have obtained a warrant. And if he had found and used evidence that Cotton might have placed in the car, we would hold that he should have done so. But we are of the opinion that, when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and that he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him. Compare Burge v. United States, 9 Cir., 1964, 333 F. 2d 210. We express no opinion as to whether he can break into a car withont a warrant if the car be locked. ’ ’
In this state of the law, the raising of the hood to ascertain whether it was a stolen car — particularly where, as here, there was probable cause to believe that it was in fact a stolen car — does not constitute a .search in violation of the Fourth Amendment. Therefore, such action did not require, as does a search which comes under the Fourth Amendment, a search warrant or an arrest incident thereto. Particularly is this so where none of the contents of the automobile was taken as evidence
*457 to be used against defendant. In this regard it was pertinently-said in Cotton v. United States (supra, p. 393). “ Agent Howerton’s examination of the car did not violate Cotton’s constitutional rights. None of the contents of the car was used in evidence against Cotton at his trial; indeed, none was removed. None of the contents was used to obtain evidence against him. Only the serial number was thus used. If the agent had found any article or paper in the car, and such evidence had been used against Cotton at his trial or to discover other evidence, we would have a different case. See Preston v. United States, supra; State of Montana v. Tomich, supra; Westover v. United States, 9 Cir., 1965, 342 F. 2d 684, reversed on other grounds, 384 U. S. 494, 495, 86 S. Ct. 1638, 16 L. Ed. 2d 694. Here, only the serial number was used. We incline to agree with Judge Pickett of the Tenth Circuit in his dissent in Simpson v. United States, supra, 346 F. 2d at 296-97, that it is not a search at all, under such circumstances as we have here, merely to check that number in order more positively to identify the car. This, we think, is quite different from looking for evidence that may have been placed in the car by its possessor. When Cotton acquired the car, the serial number and motor number came with it. And we would limit the right to check to those cases in which there is a legitimate reason to do so.”
in
In view of the foregoing, it is not necessary that I reach the-question whether defendant’s consent to Rapp to check the Cadillac was voluntarily given and, therefore, sufficient to waive the protection of the Fourth Amendment against unreasonable searches and seizures, since the raising of the hood of the Cadillac by Rapp constituted neither a search nor a seizure. The motion to suppress is denied.

. Defendant testified at the hearing that he felt, when Rapp identified himself as a policeman, that it was his duty to let Rapp “ go ahead and take a look at the ear Asked whether he allowed Rapp to look at the ear because he was a policeman, he replied: “ I have never been in trouble before and if a policeman identifies himself, I go with the law. I assume that this is wihat I have to do

. Probable cause requires no more than “a reasonable ground for belief in guilt.” (Carroll v. United States, 267 U. S. 132, 161.) “ Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he has probable cause for his belief as will justify him in arresting without a warrant.” (People v. Coffey, 12 N Y 2d 443, 451, cert. den. 376 U. S. 916.) “In dealing with probable cause * * * we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act”. (Brinegar v. United States, 338 U. S. 160, 175.)