The People of the State of New York, Appellant, *v.* Albert Spinelli, Respondent.

Second Department, June 25, 1973.

*Robert R. Meehan, District Attorney (Thomas E. Urell* of counsel), for appellant.

*Grune & Bell (Herbert H. Bell* of counsel), for respondent.

Shapiro, J. The People appeal from an order suppressing a warrantless seizure of a stolen 1967 "International" truck located in open and plain view on the defendant's business prem-

ises. The defendant has been indicted for criminal possession of the stolen property (the truck) in the first degree (Penal Law, § 165.50).

In September, 1971 the hijacking of two trucks was reported to the F. B. I. in New York City. A specific description, including information as to make, model, colors, markings, size, weight, year of manufacture, license plate number and vehicle identification number was provided for each truck. One of the trucks, the 1967 " International ", was owned by the Hertz Corporation and had been leased to the P.B. Trucking Company. It bore the marking " Roxanne Swim Suits ".

On March 21, 1972, Allen Garber, an F. B. I. agent investigating the thefts, was advised by an undisclosed informant that both of the stolen trucks were parked in the rear of the premises in Congers, New York, owned by the defendant and known as the Al Spinelli Company. The informant pointed out the premises to Garber that day. On the following day Garber and a fellow agent, from a vantage point on a public golf course adjoining the defendant's property and by use of binoculars as well as the naked eye, observed the trucks parked in the rear of the defendant's premises. Since they were able to see the trucks clearly, they determined that the trucks exactly matched the descriptions of the vehicles reported stolen as to markings and colors. (The license plates had been removed.) Garber later ascertained that no other trucks fitting the descriptions had been hijacked subsequent to September, 1971. The record is unclear as to when Garber first informed the local police authorities of the location of the trucks, but at the latest it was several months prior to the seizure. No action was taken at that time because of Garber's belief that other, more recently stolen, trucks might be brought to the defendant's premises.

Detective Gould of the Clarkstown Police Department, acting on Garber's information and accompanied by another local officer, went to the golf course adjoining the defendant's premises on August 18, 1972 and observed the same two trucks still parked in the rear of the defendant's property.

Three days later, during the afternoon of August 21, 1972, Garber, Gould, several other local police officers and Investigator Hugh Cunningham of the New York State Police went to the defendant's premises for the purpose of executing a warrant for the arrest of the defendant on a charge unrelated to the stolen trucks. The defendant was arrested by Cunningham in execution of the arrest warrant outside the front door of the building located on the property, searched and then taken inside.

Garber, Gould and Cunningham thereupon proceeded to the rear of the property and observed the two trucks still parked where they had been since March. They opened the hoods of the trucks and noted the vehicle identification numbers. A check of the numbers disclosed that they matched those of the trucks which had been reported stolen. The vehicles were seized and removed to the local police station for processing. Later that evening a warrant for the defendant's arrest on two counts of criminal possession of stolen property was obtained and the defendant was arrested on these charges the following day. Although both trucks had been seized and the second arrest warrant charged the defendant with criminal possession of both trucks, the one-count indictment pertains only to the 1967 " International " truck bearing the " Roxanne Swim Suits " marking.

In granting the defendant's motion to suppress the evidence, i.e., the " International " truck, the County Judge declared that the warrantless search and seizure could not be justified under any of the few recognized exceptions to the general rule that " ' searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment ' " (*Coolidge* v. *New Hampshire,* 403 U. S. 443, 454–455, citing *Katz* v. *United States,* 389 U. S. 347, 357).

While we express no disagreement with this salutary general rule, and there is no doubt that there was more than ample time to obtain a search warrant, we are of the opinion that the failure to obtain a warrant is not fatal because, in fact, the police never did make a search. What happened here was a seizure without a search. The facts make this clear. The trucks were parked on the defendant's premises in open view in the sense that they could be and were seen from an observation point on public property. Given the specificity of the descriptions of the stolen trucks, the police had the fullest measure of probable cause to believe that the trucks they observed were the stolen vehicles. Under such circumstances, the seizure of the trucks, based on probable cause alone and independent of the arrest of the defendant, was valid (*People* v. *Brown,* 28 N Y 2d 282).

We have previously considered a somewhat analogous situation in *People* v. *Swanberg* (22 A D 2d 902, mod. 16 N Y 2d 649).* In that case a detective investigating a theft of suits from a Ripley clothing store received information from a confidential informant that the stolen suits could be found in a private garage at a designated address. The detective proceeded

---

* The modification was based on a ground unrelated to the seizure.

to the premises at that address without a search warrant and, after receiving permission from the property owner to enter the premises and to look into the garage which had been leased to the defendant, the detective observed suits bearing Ripley tags and hung on Ripley hangers. He broke into the garage and seized the clothing. We held that the act of looking into the garage through an opening between the doors and observing the obviously stolen clothing did not constitute an unlawful search and that the seizure which followed the detective's entry into the garage was likewise not unlawful. Here, since the stolen trucks were parked outdoors, in open and full view from the adjoining public golf course, the defendant could entertain no legitimate expectation of privacy with regard to them (see *Ker* v. *California,* 374 U. S. 23, 43). They were therefore not a subject of Fourth Amendment protection (*Lewis* v. *United States,* 385 U. S. 206, 210; *United States* v. *Lee,* 274 U. S. 559, 563; *Hester* v. *United States,* 265 U. S. 57).

There is yet another line of reasoning upon which our conclusion may be predicated. Once the police had observed the trucks on the defendant's property unmistakably fitting the specific descriptions of the stolen vehicles, they had probable cause to arrest the defendant for possession of stolen property. Although in fact the defendant was arrested on a warrant for a charge unrelated to the possession of the stolen trucks and was not arrested on the possession charge until the day following the seizure, it is clear that he could have been lawfully arrested for criminal possession of stolen property at the time he was taken into custody on the unrelated arrest warrant. That being the case, it follows that the police acted within reasonable and proper bounds in seizing the fruits of the crime (cf. *Boyd* v. *United States,* 116 U. S. 616).

A very recent Court of Appeals decision (*People* v. *Brosnan,* 32 N Y 2d 254) supports this conclusion. In that case the investigation of an assault led the police to the defendant who in turn voluntarily led them to his panel truck, parked in a public garage. By looking through the window panes of the truck, the police observed items of evidence linking the defendant to the crime. The defendant was arrested and a guard was placed on the truck. Later the interior of the truck was searched. All of this occurred without a search warrant. The majority of the court held that the seizure of the truck, which occurred when the guard was placed over it in the garage, was simultaneous with the arrest of the defendant and came, therefore, under an exception to the general search warrant requirement. Although

Brosnan may have been physically closer to his truck at the time of his arrest than was the defendant in the present case, the court added (p. 260) : '' Moreover, the seizure as incident to the arrest, *or independently,* was justified because the police had observed in plain view, on consent of the defendant, incriminating evidence of the use of the truck at the scene of the crime and the paraphernalia relating the victim to the bloody scene '' (emphasis supplied).

Our case is even stronger. True, the defendant did not knowingly consent to the police observation of the trucks, but since they were parked in full and open view such consent was unnecessary. Here, the trucks were seized as the fruits of the crime and not merely for the purpose of obtaining evidence which was observed inside them, as in *Brosnan (supra).*

While the distinction between seizure of '' mere evidence '' on the one hand and seizure of instrumentalities of crime, fruits of the crime and contraband was apparently abolished by the Supreme Court of the United States in *Warden* v. *Hayden* (387 U. S. 294), a close reading of its subsequent decision in *Coolidge* v. *New Hampshire* (403 U. S. 443, *supra*) convinces us that the distinction may not have been totally abandoned. The majority opinion in *Coolidge* was careful to note, however, that Coolidge's automobile was neither contraband, stolen, nor dangerous in itself (see, e.g., p. 472). Throughout the majority opinion references are made to the search and seizure of *evidence.* Here, we are not dealing with a search for evidence but rather with a seizure of the fruits of a crime — stolen vehicles.

In answer to the contention that the check of the vehicle identification numbers by means of opening the hood constituted a '' search '', it need merely be observed that that action served only to make absolutely certain that which was virtually certain at the time the trucks were observed from a distance. Furthermore, there is ample support for the conclusion that the inspection of a vehicle identification number by opening a door or a hood is nothing more than a check of the identification of the vehicle and therefore not a '' search '' (see *Cotton* v. *United States,* 371 F. 2d 385 [9th Cir.] ; *Pasterchik* v. *United States,* 400 F. 2d 696 [9th Cir.] ; *United States* v. *Baker,* 452 F. 2d 21 [5th Cir.] ; *United States* v. *Ware,* 457 F. 2d 828 [7th Cir.] ; *People* v. *Frank,* 61 Misc 2d 450).

Having concluded that what is at issue in this case is not a search for evidence but a seizure of stolen property, we note that the limitations imposed on the permissible scope of a search incidental to a lawful arrest have no applicability to this case

(*Chimel* v. *California,* 395 U. S. 752). Nor need we be concerned with the " exigent circumstances " rule which governs warrantless searches based on probable cause (*Coolidge* v. *New Hampshire,* 403 U. S. 443, *supra;* *Vale* v. *Louisiana,* 399 U. S. 30; *Katz* v. *United States,* 389 U. S. 347). The same is true of the limits placed on the " plain view " doctrine (*Coolidge* v. *New Hampshire, supra* pp. 468–471).

In sum, we hold that despite the fact that there was sufficient time to obtain a warrant and little likelihood that the property in question would be destroyed or removed from the defendant's premises, the failure to obtain a warrant did not invalidate the seizure of the trucks, since the police knew beforehand, with a degree of knowledge approaching certitude, that the property to be seized was stolen and by reason thereof had a right to make an immediate arrest of the defendant on the ground that a felony was being committed in their presence — possession of stolen property (cf. *People* v. *Ernest E.,* 38 A D 2d 394, affd. in part and app. dsmd. in part 30 N Y 2d 884).

The order appealed from should therefore be reversed, on the law and the facts, and the motion to suppress denied.

GULOTTA, J. (dissenting). I vote to affirm on the opinion of County Judge GALLUCCI.

This was a warrantless search which fits into none of the categories which have been established as exceptions to the general rule that recognizes the Fourth Amendment preference for using search warrants where reasonably possible (*Chimel* v. *California,* 395 U. S. 752). It was not done as an incident to a lawful arrest, since that took place at the front door requiring no search of the premises as an incident of the arrest.

There were no exigent circumstances, although the articles seized were auto trucks, since they had been stored at the same location for five months to the knowledge of the authorities and there had been ample time to get a warrant (*Coolidge* v. *New Hampshire,* 403 U. S. 443).

Finally, the case does not involve an *inadvertent* discovery of evidence in plain view, since the stolen trucks had been observed and identified from a nearby public golf course with the aid of binoculars many months before.

In my opinion, the validation of this search amounts to justifying a basically illegal procedure on the basis of the successful results in this particular case and thus encourages further incursions by the police on the rights of citizens in other cases where perhaps the results will not justify the means.

HOPKINS, Acting P. J., MUNDER and CHRIST, JJ., concur with SHAPIRO, J.; GULOTTA, J., dissents and votes to affirm, with an opinion.

Order reversed, on the law and the facts, and motion denied.