■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM A. GOHN, Appellant.—Appeal by defendant from a judgment of the County Court, Suffolk County, rendered June 14, 1974, convicting him of criminal possession of stolen property in the first degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court, dated January 15, 1974, which denied defendant's motion to

suppress certain evidence. Defendant also seeks review of a further order of the same court, dated June 11, 1974, which, prior to judgment, denied his motion to set aside the verdict and for a new trial. Order dated January 15, 1974 and judgment reversed, on the law; motion to suppress granted; and indictment dismissed. In view of our determination herein, we need not consider the order dated June 11, 1974. In the beginning of December, 1971, Suffolk County Detective John Schelling became aware of "possible activities" at defendant's premises, located at 3 Lucon Drive, Deer Park, Suffolk County. The activities involved "trucks and the moving of trucks coming and going from this location." On December 16, 1971, while sitting in an unmarked car, he saw, with the aid of binoculars, numerous truck bodies and parts on defendant's premises. He also saw a tractor, which appeared to be relatively new, bearing a New Jersey license plate. At one point, he observed defendant enter and then exit from the tractor. Schelling checked with the New Jersey Motor Vehicle Bureau and ascertained that the tractor was a 1964 International, owned by defendant as president of Tandem, Inc. On the same day, Schelling related the information he had obtained to another Suffolk County detective, Richard Glasser. In addition, the detectives were told by an F.B.I. agent that, on May 6, 1970, defendant was indicted by a Federal Grand Jury for "the theft of trucks, for cutting up bodies of trucks and things of that nature." Later that afternoon, the detectives returned to defendant's premises, where Glasser observed that the International tractor appeared to be a more recent model than 1964. The next time the detectives returned to defendant's premises was about midnight on December 17, 1971; they hoped that no one would be there. The International tractor was located on an access road used by the public outside a fenced rear yard of 3 Lucon Drive. Although lacking a search warrant, they attempted to locate the confidential identification number (when a tractor-trailer is manufactured, a vehicle identification number [VIN number] is stamped in two places, one in plain view and the other in a secret location known only to the manufacturer, certain representatives of auto theft insurance companies and the police). Due to the lack of sufficient light, they were unable to find the hidden number. In the early morning hours of January 13, 1972, they returned to defendant's premises, again without a search warrant, and they found the tractor in the same location it had been on December 17, 1971. This time, Detective Glasser was able to locate the confidential VIN number. A check of the number revealed that the tractor and flat-bed trailer which was attached to it were stolen in New York City in 1970. A warrant was then obtained to search defendant's premises and a search was conducted on the evening of January 13, 1972. The police seized a number of tractors, trailers and other items, and defendant was arrested. The two postmidnight inspections of defendant's truck, prior to the obtaining of the search warrant, were improper. While defendant may not have had a reasonable expectation of privacy with regard to the access road on which the tractor-trailer was located, since the road was known to be used by the public (*Katz v United States*, 389 US 347), that did not give the police the right to inspect the vehicle, without defendant being present, to determine the confidential VIN number. Although the People describe the postmidnight actions of the police as merely being a *car check* rather than a *search*, we hold that defendant's Fourth Amendment rights were violated. Subdivision 4 of section 401 of the Vehicle and Traffic Law specifically provides that a police officer may demand that an operator of a motor vehicle produce for inspection any certificate of registration and "any information necessary for the identification of such

vehicle and its owner". This includes the right to open the vehicle door to check the VIN number and to raise the hood to check the serial number on the motor *(People v Goldstein,* 60 Misc 2d 745; *People v Frank,* 61 Misc 2d 450). While proper governmental exercise of a car check to confirm ownership of a vehicle normally involves a situation where the owner or operator of the vehicle is actually in the vehicle at the time the inquiry is made, it has been extended to a situation where a person is requested by a police officer to open the door of his vehicle parked in front of his home so as to permit the officer to examine the VIN number *(People v Hart,* 75 Misc 2d 908). However, the People have not cited any cases which have held that the police may, after having observed a vehicle on private property for an extended period of time, plan and carry out a secret postmidnight inspection of the vehicle to determine if it was stolen, without first obtaining a search warrant. Certainly, none of the situations in which a warrantless search may be allowed are present here. Even if the postmidnight inspections had been lawful, we would still hold that the search warrant was improperly issued. The affidavit submitted in support of the warrant failed to disclose the fact of the postmidnight inspections and that the detectives had learned that the tractor-trailer had been stolen. Without these facts, there could be no finding of probable cause. Before a search warrant is issued, there must be a showing of probable cause of criminal activity. This is to assure the substantial probability that the invasions involved in the search will be justified by the discovery of offending items. The issuing Magistrate must be made aware of the underlying facts which support the conclusion of probable cause in order to sustain such a finding *(United States v Ventresca,* 380 US 102; *People v Hendricks,* 25 NY2d 129). The hearing court incorrectly based its finding of probable cause partially on the information obtained by the police during the postmidnight inspections although, as was noted previously, this information had not been included in the supporting affidavit. In reviewing the validity of a search warrant to determine whether it was supported by probable cause, the reviewing court may consider only those facts which were made known to the issuing Magistrate at the time the warrant application was determined *(People v Nieves,* 36 NY2d 396; *People v Hendricks, supra).* Hopkins, Acting P. J., Latham, Brennan and Shapiro, JJ., concur.