OPINION OF THE COURT
Abbey L. Boklan, J.
On September 17, 1984, defendant was indicted (indictment No. 59604) for the crimes of criminal possession of stolen property in the second degree and violation of Vehicle and Traffic Law § 401.
On January 8, 1985, pursuant to court order dated November 27, 1984, a hearing was held to determine the admissibility of any statements made by the defendant to the police and the admissibility of evidence of the Kawasaki motorcycle seized by the police. During the course of the hearings, defense counsel withdrew his application to suppress statements made by the defendant to the police on the grounds that they were taken in violation of his constitutional rights. (Miranda v Arizona, 384 US 436 [1966].)
The defendant only preserved his motion to suppress the statements on the ground that they were the fruit of an unlawful arrest which was based on the unlawful seizure of the motorcycle. Defense counsel also stipulated for the purposes of the hearing that the VIN (vehicle identification number) of the motorcycle was checked by Officer Bregenzer and that the motorcycle was in fact stolen. Defendant does not contest the validity of the alarm under People v Lypka (36 NY2d 210 [1975].)
*1002 On July 14, 1984, at approximately 4:26 p.m., Police Officer Thomas Bregenzer received a radio assignment to proceed to 16 William Street. While in that vicinity, he observed a white male, identified as the defendant, on a motorcycle, in front of 19 Sperry Court. The defendant proceeded in Officer Bregenzer’s direction. Defendant looked at the officer, made a U-turn, and proceeded to drive into the driveway of 19 Sperry Court. During this procedure, Officer Bregenzer noticed that the motorcycle had no registration plates affixed to it. Officer Bregenzer followed the defendant onto the driveway. He observed the defendant pull into the garage and start to pull down the door. Officer Bregenzer asked the defendant for his license, registration, to remove the “bike” from the garage, and to bring it out onto the sidewalk. The door was now closed. Officer Bregenzer made the request three times before defendant removed the “bike” from the garage.
Defendant testified that the reason he brought the motorcycle out of the garage was that the officer wanted to see it. Officer Bregenzer does not remember defendant’s responses to the first two requests, but did testify that it took three requests for defendant to comply. The defendant testified that after each request, he stated, “I don’t see any reason to bring it out”. Both the defendant and Officer Bregenzer testified that the officer did not draw his gun nor did he threaten to arrest the defendant if he did not bring the motorcycle out of the garage.
During these conversations, defendant’s female friend, Elizabeth Shelley, went into the house and returned with defendant’s driver’s license. The license was a class 4 license and not one to drive a motorcycle.
The garage and residence at 19 Sperry Court was owned by the parents of Elizabeth Shelley, and although defendant testified that he never spoke to the parents directly to get permission to house and repair the motorcycle in the garage, Elizabeth Shelley had told him that he had permission. Officer Bregenzer asked defendant who the motorcycle belonged to and the defendant stated that it belonged to a girl by the name of Jo Ann, whom he met at Alley Pond Park, and that he was doing repair work on it for her. He stated that he did not know her address or last name.
Officer Bregenzer observed that the ignition switch on the motorcycle had been removed. He then found the VIN on the motorcycle and after a VIN check, which revealed that it had been stolen, he placed the defendant under arrest for the possession of stolen property.
*1003 At approximately 5:02 p.m., in the police car, on the way to the Third Precinct, the defendant was given his Miranda warnings by Police Officer Monahan. Defendant stated that he understood the warnings and proceeded to have a conversation with Officer Monahan.
CONCLUSIONS OF LAW
The sole question raised by the motion to suppress is whether the police officer’s order requiring the defendant to remove the motorcycle from the garage, so that the vehicle identification number could be checked, constituted a violation of defendant’s 4th Amendment rights.
The parties have limited their arguments, almost entirely, to whether the defendant has standing to even raise the issue of an unlawful search and seizure, based upon any expectation of privacy in the garage from which the motorcycle was removed.
If standing were the issue, then the court would find that this defendant did have a reasonable expectation of privacy in that building. However, it is the opinion of this court that the existence of standing is not determinative because under the facts presented here, no search was conducted and no seizure resulted, until after the police learned that the motorcycle was stolen.
Upon observing the defendant operating the motorcycle on the public highway, without the number plates required by law, the officer was authorized to stop the defendant and cite him for that traffic infraction. (Vehicle and Traffic Law § 402 [1].)
The officer would have then been entitled, as well, to demand to see the defendant’s license and registration, and to determine if such vehicle was registered as required by law. (Vehicle and Traffic Law § 401; People v Ingle, 36 NY2d 413 [1975]; People v Braan, 80 AD2d 920 [2d Dept 1981].)
That section of the Vehicle and Traffic Law provides, as well, that: “Every person operating a motor vehicle * * * registered * * * in accordance with any of the provisions of this chapter, shall upon demand of any * * * peace officer * * * or police officer produce for inspection the certificate of registration or the registration renewal stub for such vehicle and shall furnish to such * * * officer or police officer any information necessary for the identification of such vehicle and its owner, and all information required concerning his license to operate” (Vehicle and Traffic Law § 401 [4]; emphasis added.)
In a recent decision, the Court of Appeals stated that Vehicle and Traffic Law § 401 authorizes an officer to demand informa *1004 tian necessary to identify the car as he may demand the certificate of registration, and in both situations, the information must be provided. (People v Class, 63 NY2d 491 [1984].)
In that case, the court held that upon stopping a vehicle for a traffic infraction, the officer could not enter the car and move papers on the dashboard to check for the VIN, thereby enabling the officer to see a gun under the car seat. However, he could demand that the operator make the number visible for observation. The distinction was that, absent probable cause to believe the vehicle was stolen, no search could be conducted.
The Court of Appeals found that a search was conducted in Class (supra) apparently when the officer entered the vehicle to check the VIN, and after he first determined that no number was visible on the door of the car. The court cited several lower court decisions that held that vehicle inspections to determine the VIN were not searches. (See, e.g., People v Gohn, 49 AD2d 585 [2d Dept 1975]; People v Frank, 61 Misc 2d 450 [Sup Ct, Queens County 1969]; People v Goldstein, 60 Misc 2d 745, 747 [Sup Ct, Queens County 1969]; People v Hart, 75 Misc 2d 908 [NY City Crim Ct 1973].) The Court of Appeals did not attempt to overrule these holdings and merely found that “[o]n the facts presented * * * we conclude that a search was conducted”. (People v Class, supra, p 494.)
The differences between Class (supra) and these other decisions are instructive and relevant to the case at bar. In Hart (supra), the police officer required the owner of the car to leave his house and to open the door and hood of his car parked in front of his home, to make the VIN visible for examination. This decision was cited by the Second Department in Gohn (supra), wherein that court, while agreeing that the police had the right, under Vehicle and Traffic Law § 401 (4), to open the door and hood to check the VIN, nevertheless, held that they could not search those areas, secretly, at night. (People v Gohn, supra, at p 587.) The Frank and Goldstein decisions (supra) similarly hold that the limited intrusion of checking the VIN pursuant to Vehicle and Traffic Law § 401 (4), by opening the door or hood, is not violative of the operator’s 4th Amendment rights. (See also, People v Braan, supra, at p 921.)
Considering these lower court decisions and Class (supra) together, it can be deduced that while endeavoring to see the VIN is not automatically a search, it can become one when the officer takes steps to locate and observe the VIN, by entering the vehicle, and peering into areas not otherwise visible. (People v Class, supra, p 495; hut see, People v Spinelli, 42 AD2d 64 [2d *1005 Dept 1973].) The decision in Class turns on whether the officer had the right to be in the vehicle and in the position from which he made his observation. It does not limit the ability of police officers to demand to see and then to inspect the VIN. In. fact, the Court of Appeals suggests that the officer act as authorized by Vehicle and Traffic Law § 401 (4), and require the operator to make the VIN open and available to examination. The operator would then avoid any infringement on his privacy rights by making the VIN observable and such compliance would not constitute a search. (People v Class, supra, p 497.)
By analogy, it can be reasoned that an officer’s demand to produce one’s registration, even if unwillingly complied with, is not a search of the person. True, the person has not voluntarily consented, but he has given in and complied with a lawful order of the officer. In the same vein a person required to open the door of his car and/or the hood, as in Hart (supra), or to move items on his dashboard, as recommended by the Court of Appeals in Class (supra), has not submitted to a search of his vehicle. He has merely produced the information he must provide on demand, pursuant to Vehicle and Traffic Law § 401 (4) (People v Class, supra, p 497, n 4.)
Applying this rationale to the present case, it is obvious that no search occurred.
The officer saw the defendant enter the garage and close the door. He immediately demanded, as he is authorized, to see the defendant’s registration and the vehicle itself, so that the VIN could be ascertained. The mere fact that the vehicle was now behind the closed door to the garage does not change the officer’s authority or the defendant’s duty.
Similarly, if the officer observed the defendant holding his registration in his hand, and then put in his pocket, or wallet, the officer could still demand that it be brought out again for inspection and as already stated, no search of the person would have occurred.
Nor was the officer endeavoring to search the garage on a pretext. He did not go into or even look into it, and only ordered the vehicle brought back out to the sidewalk. Thus, the defendant’s expectation of privacy in that premises was not violated. He could not reasonably expect that the vehicle, which he just seconds before was operating on the street, would remain private and safe from examination because he beat the officer into the garage.
For the same reasons the examination of the motorcycle was not an unlawful seizure. This was not a random stop of an *1006 otherwise lawfully operated vehicle. The officer wanted the vehicle on the sidewalk only for the purpose of checking the VIN. Importantly, the defense never raised the issue or argued that the vehicle itself was subjected to a “full blown” search. The court may safely assume that the VIN on this motorcycle was readily ascertainable. (See, e.g., Conner v State, 34 Md App 124, 366 A2d 385 [Ct of Spec Apps 1976].) Thus, the intrusion caused by the cursory examination was minimal and not a search of hidden areas or private places. (Cf. Cardwell v Lewis, 417 US 583, 588-591 [1974] [exterior examination of vehicle not a violation of rights to privacy].)
The defense cannot support its argument that a search of the garage or seizure of the vehicle was conducted here. Just as they could not claim, merely because the defendant’s girlfriend entered her home to obtain the defendant’s license, which the officer had demanded be produced, that her house had thereby been searched, or the license seized.
The logic is inescapable then, that the removal of the motorcycle from the garage was not a search or seizure. Importantly, the officer never entered any private area nor required the defendant to do anything more than make the VIN visible for inspection. Since the defendant was obligated to provide this information, he cannot claim that his 4th Amendment rights to privacy were violated.
The motion to suppress the property seized and the resulting statements by the defendant is denied. The defense has conceded that the statements were otherwise lawfully obtained.