OPINION OF THE COURT
Wachtler, J.
In 1975 two indictments were filed against the defendant in Nassau County. In the first indictment he was charged with burglary in the third degree and related offenses allegedly committed in Farmingdale in November, 1974. The second indictment charged him with criminal possession of stolen property, unauthorized use of a vehicle, attempted burglary in the third degree and related offenses allegedly committed in Roslyn Heights in December, 1974.
On the latter indictment the defendant made a pretrial motion to suppress. Specifically he sought to suppress a car and items found in the car after he had been caught in the act of attempting to burglarize a store at a Roslyn Heights shopping center. He also sought to suppress statements subsequently obtained by the police at the station house, in the absence of counsel, after he had refused to answer questions without an attorney’s assistance.
After a hearing the motion to suppress was denied. The *436 defendant then pleaded guilty to the highest count of each indictment (burglary in the third degree and criminal possession of stolen property in the first degree) in full satisfaction of both indictments. At the time of plea the court stated that the defendant could withdraw his plea if the court was unable to keep a negotiated sentencing promise of three to six years on each count with the sentences to run concurrently. The defendant was later sentenced in accordance with the commitment. The Appellate Division affirmed, without opinion.
On this appeal the defendant claims that the motion to suppress should have been granted and that the plea covering both indictments should therefore be set aside.
At 12.45 a.m. on December 31, 1974 Police Officer Mangiaracina drove into the front of a shopping center in Roslyn Heights and noticed a white 1974 Plymouth with rental plates. The vehicle was parked behind the shopping center’s maintenance truck in a manner which made it invisible from the roadway. Having noted that this vehicle was the only one in the parking lot not belonging to one of the shopping center stores, and the odd place in which it was parked, Officer Mangiaracina wrote down the license plate number and drove to the rear of the shopping center.
When he arrived at the rear of the buildings, the officer observed the defendant bending down near the entrance of an A&P store with a lock from the door in his left hand and a tool in his right hand. As soon as he was spotted, the defendant rose and threw away the tool, later identified as a lock-pick. The officer drew his gun, ordered the defendant to freeze, and requested assistance on his police radio. The defendant started moving away from the officer, tossing aside a case which was later found to contain tension bars and other tools used to pick locks. The officer again told the defendant to freeze or he would shoot. The defendant stopped and was immediately frisked.
By this time Officer Cervelli had arrived and assisted in the frisk which revealed a flashlight and a radio tuned to receive police calls. The defendant was told he was under arrest and was given the preinterrogation warnings prescribed in Miranda v Arizona (384 US 436). When he indicated he understood the warning, he was asked whether he was "willing to answer questions before talking with a lawyer or having one present”. The defendant answered "No”. It was then approximately 1 A.M.
*437 The search of the defendant also produced $500 in cash and a set of keys which Officer Mangiaracina identified as being Chrysler Motors keys. The keys where on a chain with a plastic disc which appeared to be the type used by car rental agencies. Recalling the leased Plymouth parked on the other side of the shopping center, Officer Mangiaracina gave the keys to Officer Cervelli to check out the vehicle. This Cervelli did by driving to the Plymouth, parked approximately 1,000 feet from where the arrest took place. He used the defendant’s keys to open the door which was locked.
On the front seat of the car, the officer found an envelope containing six crystals which were later found to fit the defendant’s radio. The officer also found a copy of the automobile registration in the glove compartment. On a radio check it was found that the Plymouth had been stolen from the Hertz Corporation. Cervelli then returned to Mangiaracina and the two officers took the defendant to the police station.
At the station house the defendant was handcuffed to a desk while Officer Mangiaracina completed paperwork on the arrest. When the defendant had been in the police station approximately 10 minutes the detective supervisor, Sergeant Mangan, asked him if he had been advised of and if he understood his rights. The defendant answered affirmatively. At the hearing the court found that when Officer Mangiaracina finished taking the defendant’s pedigree he proceeded to ask the defendant questions about the attempted burglary and the contraband seized. Although approximately an hour earlier the defendant had informed the officer that he did not wish to answer questions about this incident without the assistance of counsel, and the defendant had not yet consulted an attorney, the officer continued to question him in the absence of counsel. The officer explained at the hearing that he felt there was "no harm in trying”. In response to the question the defendant told how much he had paid for the burglar’s tools and that he wanted to get food from the A&P for a New Year’s Eve party. He told of using the police radio to listen for police calls and boasted of making more than $25,000 a year "tax free” from his life of crime.
As noted, the trial court denied the defendant’s motion to suppress both the physical evidence and the oral statement.
With respect to the physical evidence, the trial court held that the People had the right to impound and inventory the vehicle and, although this was not done in this case, the *438 right to do so would have led to the "inevitable discovery” of the items sought to be suppressed. We agree with the trial court that suppression of the physical evidence should have been denied, but for a different reason.
The defendant was caught literally red-handed at 12:45 a.m. New Year’s Eve at the door of an A&P with a lock in one hand and a lockpick in the other. There can be no question but that his arrest was based on probable cause. Thus it is appropriate to direct our inquiry to the action taken by the police with respect to the vehicle immediately after that arrest to determine the connection, if any, between the defendant, the vehicle, and the crime. Upon the facts presented we must determine if the police had a reasonable belief that the vehicle was, in some way, associated with the crime and that a search of the vehicle would "produce the fruits, instrumentalities, contraband or evidence” of the crime (People v Lewis, 26 NY2d 547, 552).
Without question the police, had good reason to believe that the car belonged to the defendant. It was the only vehicle in the deserted shopping center which did not appear to belong there and it had been parked in a manner which concealed it from the view of the casual passersby. Indeed, it was these two suspicious elements which led Officer Mangiaracina to record the license number even before the defendant was apprehended. The car was a Chrysler Motors vehicle and the keys found in the possession of the defendant were identified by the arresting officer as belonging to a Chrysler Motors car. The chain and disc holding the keys indicated that the car had been rented and Officer Mangiaracina had observed that the Plymouth bore rental plates. With these elements in mind the police officers, at the time they completed frisking the defendant, had every reason to believe that the car belonged to him.
Once the police were convinced that the defendant was operating the car, the nexus between the car and the crime itself became apparent. The car had most likely been used to bring the defendant to the scene of the crime and was most likely to be used by him for escape with the proceeds of his crime. At the time of the arrest the officers had no way of knowing whether the A&P was the defendant’s first target or if he had previously plundered other stores in the shopping center. In either event, the potential escape vehicle could very *439 well have concealed stolen property, other burglar tools or additional criminal instrumentalities.
 One last word on the search of the automobile. We agree with the appellant that whereas warrantless searches of automobiles have been sustained in circumstances that would not justify a similar search of a building (Cady v Dombrowsky, 413 US 433) there is no blanket "automobile exception” to the constitutional protections against unlawful searches and seizures (Preston v United States, 376 US 364; People v Spinelli, 35 NY2d 77). On the other hand, to attempt a judicial restraint on the search which was conducted in this case would be to ignore the exigencies of the moment — the danger and difficulty incidental to guarding the vehicle in a desolate parking lot at that hour on New Year’s Eve; the possibility of accomplices gaining access to the car; and, of course, the mobility of the vehicle. To say that the police should be discouraged from conducting this vehicle search would require a perverse application of the exclusionary rule.
With respect to the statements the defendant made at the police station the trial court found they were admissible because the defendant had not been coerced. However in view of the fact that the defendant had initially refused to answer questions without an attorney’s assistance the admissibility of these statements, made in the absence of counsel, does not depend solely on voluntariness in traditional terms. As noted in People v Grant, (45 NY2d 366, decided herewith), Miranda imposes additional obligations on the police when the defendant asserts his rights. And even if under these circumstances the police were not absolutely prohibited from renewing the questioning in the absence of counsel — a question we need not decide in this case — they must at least scrupulously honor the defendant’s right to counsel before continuing the interrogation (People v Grant, supra).
In People v Buxton (44 NY2d 33) we held that when a defendant asserts his right to counsel at the time of arrest the police may not simply readvise him of his rights upon his arrival at the station house in order to obtain a waiver. This case is essentially undistinguishable from Buxton because here, following the defendant’s assertion of his right to counsel, the police only broke off the questioning long enough to transport the defendant to the police station and complete the initial paperwork on the arrest. Indeed in this case they did not even take the precaution of readvising him of his rights *440 (see People v Munlin, 45 NY2d 427, decided herewith; compare Michigan v Mosley, 423 US 96, 106). They simply ignored his earlier refusal to answer questions about the incident without the assistance of counsel and continued to question him about the same criminal acts before he had an opportunity to consult with a lawyer and obtain his advice or assistance. Thus the police did not scrupulously honor the defendant’s refusal to answer questions without an attorney and the statements are inadmissible.
Finally the People argue that if the trial court erred in denying the motion to suppress the statements, we should only vacate the plea to the Roslyn Heights indictment since the suppression motion was only directed at that indictment. They rely on People v Lowrance (41 NY2d 303) in which we held that a defendant who had been convicted at trial on one indictment and had later pleaded guilty to an additional count in satisfaction of other charges should not be entitled to have the plea set aside merely because the conviction on the verdict was later reversed for trial errors. Although in the Lowrance case the defendant had received concurrent sentences on all counts we noted that he pleaded without any commitment on sentence and thus should not be permitted to "renounce the understanding made at the time of plea” (People v Lowrance, supra, p 305). In this case however the plea covered both indictments and was expressly conditioned on the negotiated agreement that the defendant would receive concurrent sentences on the separate counts to which he pleaded. Thus in order to give effect to the plea commitment in this case the plea should be vacated in its entirety.
Accordingly, the order of the Appellate Division should be reversed, the plea vacated and the defendant’s statement suppressed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order reversed, etc.