THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN STROH, Appellant.

Second Department, August 7, 1978

**APPEARANCES OF COUNSEL**

*David J. E. Silber* for appellant.

*John R. King, District Attorney (Bridget R. Rahilly* of counsel), for respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

The judgment convicting defendant of murder in the second degree should be reversed, the motion to suppress granted and the case remitted to the County Court for further proceedings on the indictment.

Defendant has been convicted of murdering Patricia Eie during the early morning hours of July 4, 1975, by stabbing her with a knife. The prosecution presented evidence of successive oral, written and taped confessions made by defendant.

The evidence adduced at the *Huntley* hearing established that the defendant was arrested on July 8, 1975, at 7:00 P.M., given the *Miranda* warnings and transported to State Police Troop K Headquarters, where he arrived at about 7:30 P.M. At 8:00 P.M. Senior Investigator Donald Scherpf again advised defendant of his constitutional rights. The defendant indicated that he understood his rights, but that since he was innocent of the crime he had no objection to talking to the police. Investigator Scherpf proceeded to ask a number of questions, none of which elicited any inculpatory statements by the defendant.

At that point, Investigator Scherpf was informed of the identity of the deceased and that she had resided in the same apartment complex in Wappingers Falls where the defendant lived. The People's evidence establishes that when confronted with this information, defendant said, "Hold it, I would like to either have an attorney or a priest to talk to, to have present." Investigator Scherpf asked, "Who do you want?" and defendant replied, "Contact a priest down in the Parish, in Beacon." Investigator Scherpf directed another officer to contact the priest and then proceeded to continue with the questioning. In response to a series of questions, the defendant confessed to the killing of Patricia Eie. A stenographer was called in, defendant was again advised of his constitutional rights and, from 9:00 P.M. to 10:00 P.M., another confession, in question and answer form, was obtained from him by Scherpf. The confession was typed and signed by the defendant at 11:00 P.M. Shortly thereafter a Dutchess County Assistant District Attorney, George T. Marlow, arrived at the headquarters and advised defendant of his constitutional rights. Marlow pro-

ceeded to obtain a third confession, in question and answer form, which was recorded on a cassette recorder and concluded at 11:30 P.M. At the outset of the questioning, when Marlow alluded to defendant's waiver of his constitutional rights when questioned by Investigator Scherpf, defendant said, "Well, I had asked for a lawyer before and nobody said nothing."

Father Peter Napoli testified that in response to a telephone call he received from the State Police, he arrived at headquarters at about 11:00 P.M. on July 8, 1975. After waiting for about 15 minutes, he spent 10 minutes alone with the defendant. He did not act in the capacity of a legal advisor.

All of the statements made by the defendant subsequent to his request for an attorney or a priest should have been suppressed.

The following principles as set forth by the Supreme Court of the United States in *Miranda v Arizona* (384 US 436, 474) are axiomatic:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present * * * If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. Illinois,* 378 U. S. 478, 490, n. 14" (p 475).

"The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning"* (pp 444-445; emphasis supplied).

"The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege *and not simply a preliminary ritual to existing methods of interrogation"* (p 476; emphasis supplied).

Under the *Miranda* holding, when the defendant asked for an attorney or a priest the police were required to desist from any further interrogation until there had been compliance

with his request (see *People v Grant,* 45 NY2d 366; *People v Munlin,* 45 NY2d 427; *People v Clark,* 45 NY2d 432; *People v Hodge,* 44 NY2d 553; *People v Jackson,* 41 NY2d 146, 150-152; *People v Buxton,* 44 NY2d 33). The facts present herein appear to confirm the fear of the Supreme Court, expressed in *Miranda,* that the required warnings and waiver would be treated as a mere ritualistic lip service adherence to basic constitutional rights of a person under police interrogation. Certainly, once the defendant stated, "Hold it, I would like to either have an attorney or a priest to talk to, to have present", the interrogation should have ceased. If, in fact, there had been a prior waiver, the waiver at that moment was withdrawn.

In *People v Hodge,* Associate Justice BIRNS of the Appellate Division, First Department, then sitting in Criminal Term, New York County, suppressed a confession where the police continued to question the defendant despite his request for the presence of a particular priest. The Court of Appeals, in affirming the conviction, noted the ruling of Mr. Justice BIRNS pertaining to the aforesaid suppression with approval. The facts in the instant case are stronger than *Hodge* in requiring suppression. Here the defendant asked for an attorney or a priest. The conduct of the authorities, in asking, "Who do you want?", notifying Father Napoli and then proceeding with the interrogation, did not constitute a meaningful adherence to the requirements of *Miranda.* The defendant may well have been given the impression that unless he knew of a specific attorney, the only option open to him was to ask for the priest with whom he was acquainted. A proper adherence to the spirit and intent of *Miranda* at the very least dictated that the police clarify his rights at that point and re-emphasize that if he wanted an attorney one would be obtained for him and that he could remain silent until the attorney arrived. Defendant's statement to the Assistant District Attorney at the outset of the third confession that evening, to the effect that he had earlier requested an attorney, is significant as an indication of his confusion with regard to his rights.

In *People v Jackson* (41 NY2d 146, *supra),* the defendant, after appearing voluntarily at the police station, was informed that he was a suspect in a robbery and advised of his constitutional rights, including the right to be represented by counsel. Defendant told the interrogating officers that he did not wish to speak to them until after he consulted with counsel. The

police officers made several unsuccessful efforts to place a telephone call for the defendant and, thereafter, the defendant was permitted to attempt to reach the number. His effort was also unsuccessful. The defendant then requested the opportunity to speak to his parents and was permitted to do so. Then the mother of an alleged coparticipant in the robbery was permitted to importune the defendant to tell the truth. In response thereto the defendant made certain admissions. The police again advised the defendant of his constitutional rights and he signed a waiver. The defendant made certain admissions and signed a written confession. The Court of Appeals reversed the order of the Appellate Division and directed that all of defendant's statements be suppressed. Judge WACHTLER, writing for a unanimous court, stated (p 151):

"We find that the defendant's original statement was not voluntary and the People were not justified in attempting to secure, and eventually securing, a waiver of the defendant's constitutional rights after he had asked to speak with counsel. Therefore, all of the statements made by the defendant after his request for counsel, including the written confession, should have been suppressed.

"It is fundamental and a well-established constitutional principle that if a defendant expresses a desire to speak with a lawyer, the police are prohibited from any further interrogation of him until he has been given that opportunity *(Miranda v Arizona,* 384 US 436, 474; see *People v Gary,* 31 NY2d 68)."

In *People v Buxton* (44 NY2d 33, *supra),* the police, in the course of a rape investigation, apprehended the defendant at the place of his employment. The defendant, in the hearing of the police (p 35), requested his supervisor to " '[c]all my wife and call my lawyer.' " Defendant was then taken to police headquarters, informed of the nature of the charges against him and advised as to his *Miranda* rights. Defendant claimed that he continued to request a lawyer, although the police testified otherwise. The Judge presiding at the hearing found that after being advised of his *Miranda* rights, the defendant made no further request for his wife or a lawyer and denied the motion to suppress. Nevertheless, the Court of Appeals reversed the order of the Appellate Division, which had affirmed the judgment, and granted the motion to suppress. In so doing, the court stated (pp 36-37):

"The facts present two questions: the first, the effect to be given to defendant's request, made in the presence of police,

that a third party take steps to obtain a lawyer for him; the second, the legal significance of a finding of a waiver of the right to, and in the absence of, an attorney within an hour of an indication by defendant that he desired such right to be honored.

"As to the initial issue, the People assert that defendant's first and only request for an attorney was not made to the police but to his employer, and hence there is lacking from this case a specific and clear request to the interrogating officers that defendant did not wish to speak with them until he had consulted with an attorney. This argument is without merit.

"It is established that if a suspect 'indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning' (*Miranda v Arizona,* 384 US 436, 444-445, *supra*) * * * Therefore, we conclude initially that, having been apprised of defendant's request for counsel, the police violated his constitutional rights by questioning him, in the absence of an attorney, within less than an hour of his request (see *People v Jackson [Shelly],* 22 NY2d 446, 452-453; see, also, *People v Noble,* 9 NY2d 571; cf. *Escobedo v Illinois,* 378 US 478, 485-486)."

Further, the court, in addressing itself to the contrast between a circumstance when the defendant merely remains silent and one where a defendant requests a lawyer, held (p 37): "However, as contrasted with a mere assertion of the right to remain silent, '[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present' (*Miranda v Arizona,* 384 US 436, 474, *supra;* see *Michigan v Mosley,* 423 US 96, 104, n 10; see, also, concurring opn [WHITE, J.], 423 US, at pp 109-110; *United States v Kinsman,* 540 F2d 1017)."

It should further be noted that in the case at bar, the police recommenced their interrogation immediately after defendant's request, unlike the one hour interval between the defendant's request for a lawyer and the giving of the *Miranda* warnings and commencement of interrogation in the *Buxton* case.

The Court of Appeals was confronted with a similar issue in *People v Grant (supra),* decided as recently as July 13, 1978. The salient facts are set forth succinctly at the beginning of the court's opinion (p 369): "The defendant, after being arrested

and advised of his rights, requested the assistance of counsel. Ten minutes later, without having consulted an attorney, he was readvised of his rights, waived them and made a statement because, in the interim, the arresting officer had given him a fuller 'explanation' or 'understanding' by advising him of the strength of the case against him. A pretrial motion to suppress the confession was denied and, after the People had rested their case at trial, the defendant pleaded guilty to the murder count of an indictment charging him with murder and possession of a weapon."

The court reversed the order of the Appellate Division, ordered the guilty plea to be vacated and granted the motion to suppress. In doing so the court stated (pp 371, 372, 375):

"In *Miranda* the court established two different types of safeguards. First it prescribed the now familiar *Miranda* warnings which the authorities must give to all persons held in custody before interrogation commences (see *Miranda v Arizona, supra,* p 444). Secondly the court established the less familiar procedures the police must follow if an individual asserts his rights by requesting counsel or electing to remain silent.

"With respect to the right to remain silent the court states: 'If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked' *(Miranda v Arizona, supra,* pp 473-474). * * *

"With respect to a request for counsel the court was apparently more specific: 'If the individual states that he wants an attorney, the interrogation must cease *until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent' *(Miranda v Arizona, supra,* p 474 [emphasis added]). * * *

"Even if the authorities may resume questioning in the absence of counsel after the defendant has requested an attorney's assistance—as they may when the defendant has merely asserted the right to remain silent—*Miranda* would at least require that they 'scrupulously honor' the request for counsel before they continue the interrogation *(Michigan v Mosley* [423 US 96], *supra;* see, also, *People v Jackson,* 41 NY2d 146; *People v Buxton,* 44 NY2d 33). And in this case, as in our earlier decisions in *Jackson* and *Buxton,* it is sufficient to note that this requirement has not been met." (To the same effect, see *People v Munlin,* 45 NY2d 427; and *People v Clark,* 45 NY2d 432, both decided July 13, 1978.)

Under the circumstances herein, not only must the oral statement taken by Investigator Scherpf be suppressed, but also the two confessions which followed. The repeated advice by the police with respect to his constitutional rights and the waivers by defendant subsequent to his request for an attorney or a priest were ineffective in view of the continuing nature of the interrogations (see *Miranda v Arizona,* 384 US 436, *supra; People v Grant,* 45 NY2d 366, *supra; People v Munlin,* 45 NY2d 427, *supra; People v Clark,* 45 NY2d 432, *supra; People v Hodge,* 44 NY2d 553, *supra; People v Jackson,* 41 NY2d 146, 152-153, *supra; People v Buxton,* 44 NY2d 33, *supra).*

Accordingly, the judgment of conviction should be reversed, the motion to suppress granted and the case remitted to the County Court for further proceedings on the indictment.

Titone, Rabin and Margett, JJ., concur.

Judgment of the County Court, Dutchess County, rendered October 7, 1976, reversed, on the law, motion to suppress granted and case remitted to the County Court, Dutchess County, for further proceedings on the indictment.