Fuchsberg, J.
(dissenting). On this case’s second go round in this court, I remain convinced, as was the court when the matter was last here, that the warrantless search of Belton’s jacket, as it lay on the back seat of the unoccupied automobile, fell outside the permissible scope of a search-incident-to-an-arrest. I am no less so now that the court newly elects to act under the State rather than the Federal Constitution. Interestingly, however, though the majority now professes that it is not fettered by the Federal Constitution in this respect, it avoids answering the question as to whether its original-search-incident-to-arrest stand is as valid under New York’s search and seizure clause (NY Const, art I, § 12)[1] as it was when the court deferred to the Supreme Court. Instead, turning its back on *59 its prior convictions and reaching for a rationale that the parties themselves have not urged upon us, to conform its result to that espoused by the Supreme Court it concludes that the search was permissible under the State Constitution under the so-called “automobile exception”.
Specifically, I cannot subscribe to the view that our State Constitution provision, which evinces an unequivocal concern that warrantless searches be strictly limited, can have intended to support the search on this much-criticized theory (see infra, at p 66). To the contrary, I am persuaded that fidelity to our constitutional standards precludes the warrantless search of a “container” which, having come under police control, presents no “exigency” — save as one arbitrarily may choose to characterize the occasion as urgent for no better reason than it was found in a motor vehicle. Nor, in this regard, given exclusive police control,[2] does it seem other than specious to draw a distinction over the happenstance that a “container”, be it luggage, a briefcase, a parcel or a garment whose pockets provide a private receptacle for one’s wallet, keys or other possession, was placed in the tonneau of the car rather than in the trunk. My reasons follow.
But first, since the present majority and I, our previous reliance on the Federal Constitution having been rebuffed, now turn to the State Constitution, comment on this score is in order. There is, of course, nothing unprecedented or unique in a sovereign State’s assertion of its privilege to more stringently safeguard individual rights. The Supreme Court has repeatedly maintained that the Federal Constitution establishes only a base level of protection for individual rights and that “a State is free as a matter of its own law to impose greater restrictions on police activity” (Oregon v Hass, 420 US 714, 719; see, e.g., Barker v Wingo, 407 US 514, 523; Sibron v New York, 392 US 40, 60-61; Cooper v California, 386 US 58, 62; see, generally, Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv L Rev 489).
*60 Indeed, even where the language of the two Constitutions is precisely the same, there need be no uniformity of interpretation (see People v Elwell, 50 NY2d 231, 235; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159-161; People v Isaacson, 44 NY2d 511, 519-520; Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84). For history teaches that the Federal Bill of Rights, when adopted, in the main mirrored corresponding pre-existing provisions of the Constitutions of the newly independent States and not the reverse (see 1 Schwartz, The Bill of Rights: A Documentary History, pp 199, 206, 383; vol 2, p 1204).[3] Indeed, Revolutionary diarists reveal that the drafters of the Federal Constitution contemplated that the States would remain the chief defenders of these rights (The Federalist Papers, No. 45 [Madison], No. 17 [Hamilton], both quoted in Mosk, The State Courts in American Law: The Third Century [Schwartz ed], at p 223). Thus, so long as freedom of the individual is thereby enlarged rather than diminished, recourse to State Constitutions for vindication of such regional right to differ was provided.[4] New York has not hesitated to avail itself of this *61 fundamental principle of Federalism (e.g., Bellanca v State Liq. Auth., 54 NY2d 228; People v Elwell, supra; Cooper v Morin, 49 NY2d 69; Sharrock v Dell Buick-Cadillac, supra; People v Isaacson, 44 NY2d 511, supra; People v Hobson, 39 NY2d 479).
Not unrelated to the accelerating pace at which States have come to rely on their own Constitutions are the somewhat correspondingly increased number of instances in which an important conceptual shift or troublesome indecision by the Supreme Court has disturbed the symmetry of State law whose design had been influenced by the Federal Constitution alone (see Mosk, supra, pp 216-220, and cases collected thereat; Wilkes, The New Federalism in Criminal Procedure: State Court Evasion of the Burger Court, 62 Ky LJ 421, 450; Falk, A More Than “Adequate” Nonfederal Ground, 61 Cal L Rev 273, 277-279, ns 17, 18). The question for State courts then may become: Are we endlessly to march up and down the jurisprudential hill to the ever-present beat of the Supreme Court’s drum?[5]
A well-nigh perfect example of the problem is found in the pair of Supreme Court decisions which includes the one returned to us now (New York v Belton, 453 US 454). It is no coincidence that it and Robbins v California (453 US 420) were handed down together. The two are very close on their facts. Opinions in one take note of those in the other. Both involve an initial stop of an automobile for a traffic violation, pat-down of the occupants, their arrest at the scene[6] and a search at the scene of a personal “container” found in the automobile. In Belton, the “container” was a leather jacket whose zippered pockets were closed; in Robbins, it was a wrapped and sealed package. The only difference of any consequence is that in Belton the “container” was in the passenger compartment *62 of the automobile, while in Robbins it was found in the trunk.
In disposing of these cases, seven different Justices wrote more than that number of opinions, which, by and large, were as varied as varied can be. In delivering the opinion of the court in Belton, Justice Stewart held that, though the defendant was separated from the car and his jacket was not within his reach when he was arrested, it nevertheless was deemed subject to his “immediate control” and therefore its search was an “incident to a lawful custodial arrest” (New York v Belton, 453 US 454, 460, 462, supra). On this basis, Justice Stewart was willing to automatically expose a closed container located in the passenger compartment of a car to a rionexigent, warrantless search. In contrast, in the plurality opinion which he authored in Robbins, the same Justice wrote that a closed package found in a car trunk was entitled to the same protection that a closed container discovered anywhere else would be because of the individual’s “expectation that the contents would remain free from public examination”. That is, a search warrant was required.[7]
Justice Rehnquist, in providing one of the votes for the 5 to 4 result in Belton, in turn, concurred only because the court did “not find it necessary to consider the ‘automobile exception’” and because it was unwilling to abolish the exclusionary rule (New York v Belton, supra). Justice Stevens, in a separate concurrence, then explained that he was contributing his vote for the reasons elaborated in his Robbins dissent. There he took issue with the Robbins plurality and Justice Powell and opined that the “automobile exception” was applicable to both cases and that it permitted the warrantless search of the package in the Robbins trunk and the jacket on the Belton back seat.
Expressing even greater differences than did the concurring members of the slender and doctrinally divided Belton majority, Justice Brennan, in a dissent joined by Justice Marshall, branded the majority’s view that a car’s interior is always within the immediate control of an arrestee “a *63 fiction”, “a great disservice”, “a dangerous precedent”, “analytically unsound”, “inconsistent with every significant search-incident-to-arrest case” and insisted that, even if expediency rather than principle were a permissible approach, the court had “undermined rather than furthered the goal of consistent law enforcement”[8] (New York v Belton, supra [dissenting opn, Brennan, J.], at pp 466, 469, 468, 468, 468, 471).
In a separate dissent authored by Justice White, and in which Justice Marshall also joined, we have the flat statement that the writer just “[could] not subscribe” to a rule under which “searches of luggage, briefcases and other containers in the interior of an auto are authorized in the absence of any suspicion whatsoever that they contain anything in which the police have a legitimate interest” (New York v Belton, supra [dissenting opn, White, J.]).
Writing as a concurrer in Robbins, but speaking of Belton, Justice Powell noted his general agreement with a “bright-line” rule sanctioning, as an incident to an arrest, the search of containers found in a passenger compartment but not those in the car trunk. He differed, however, with the Robbins plurality’s extension of the warrant requirement to every closed opaque container except those which, because of a revealing shape or other characteristic, may be said to place their contents in plain view. Justice Pow-. ell would require a warrant “only when the container is *64 one that generally serves as a repository for personal effects or that has been sealed in a manner manifesting a reasonable expectation that the contents will not be open to public scrutiny.” (Robbins v California, supra, at p 432 [concurring opn, Powell, J.].) In addition, referring to the “presently fractured Court”, Justice Powell also reflected that “the law of search and seizure with respect to automobiles is intolerably confusing” and that “[t]he Court apparently cannot agree even on what it has held previously, let alone on how these cases should be decided.” (Id., at pp 435, 430.)
Justice Blackmun, in yet another writing, dissented in Robbins and would have adopted a rule that a warrant not be required to search and seize any personal property found in an automobile which itself is seized without a warrant. And Justice Rehnquist, in a second dissent, in which he termed the “preference for a warrant” a “judicially-created” one, reiterated his oft-expressed conviction that the Fourth Amendment’s “no warrants shall issue but upon probable cause” language does not mandate warrants, but only qualifies such as “may issue” (Robbins v California, supra [dissenting opn, Rehnquist, J.], at p 438; emphasis added). He caps his comments by dubbing the court’s decisional course in this area “twisting and turning”.[9]
If there then is anything this Belton-Robbins survey of contemporary Supreme Court institutional thinking on this subject strongly suggests, it is that, in being compelled to focus on our State Constitution, we take the occasion to return to first principles. Broadly stated, in the context of search and seizure law, this enjoins us to recognize that the intent of our State Constitution is that we never lose sight of the goal of assuring the utmost individual privacy and liberty. This is not to say that the pragmatics of societal • protection are to be ignored, but, rather, in the words of Justice Harlan, that “endorsement of a warrantless invasion of that privacy where another course would suffice is simply inconsistent with our repeated stress on * * * *65 ‘adherence to judicial processes’” (Chambers v Maroney, 399 US 42, 64 [Harlan, J., concurring in part and dissenting in part]; emphasis added). As this wise counsel suggests, only such adherence, and not the illusory expedient of one “bright line rule” or another, be it the one so discordantly denominated by the Supreme Court or be it the less labeled one our majority ventures today, can hope to lead us out of the decisional morass.
Now, like most constitutional guarantees, section 12 of article I of our State Constitution, is not self-executing. So, its drafters had enough foresight not only to articulate the expectation of freedom from unreasonable searches, but, by setting up the warrant requirement, to draw on what to them was the familiar dynamics of checks and balances (see, e.g., The Federalist Papers, No. 48 [Madison], No. 49 [Hamilton or Madison], No. 51 [Hamilton or Madison]). Self-evident is the design that well-intentioned invasions by overzealous officers, who might forget that over the long haul a good end does not justify an illicit means, will be curbed by the foreknowledge that, save in an exigency, they must first satisfy the detached magistrate that the contemplated action is warranted (see United States v United States Dist. Ct., 407 US 297, 317; Coolidge v New Hampshire, 403 US 443, 481).[10]
For these reasons, one must certainly would have thought, especially after the Supreme Court spoke as it did in Arkansas v Sanders (442 US 753, 758), that it is beyond cavil that “mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant”. And, exceptions to this rule are to be narrowly construed (Mincey v Arizona, 437 US 385, 393; see, generally, Amsterdam, Perspectives on the Fourth Amendment, 58 Minn L Rev 349, 358-360). It therefore can come as no surprise that, as one of the members of this court had occasion to note, long before Sanders, “careful *66 study of the [Federal] ‘exception’ cases will reveal that the rationale underlying the case where the exception was established was not that there was a good reason to search, but that there was a good reason why a search warrant could not be obtained” (People v Brosnan, 32 NY2d 254, 267 [Wachtler, J., dissenting]).
In this perspective, I now move to the much criticized “automobile exception”, a “rule by rubric” (People v Brosnan, supra, at p 264), which, in light of the disarray produced in the Supreme Court on this subject after half a century of tacking and filling in its application, I find it regrettable this court today advances.[11] All the more is this so since, .on freshly probing our State Constitution, we are now freer than we are likely to be again to act upon the mistakes of the past.
The vice in the “automobile exception”, which, of course, in essence is but another “bright line rule”, is that, while exigency may permit dispensing with a warrant under the circumstances of a particular case, and though the nature, mobility or other properties of the objects or site of a proposed search surely may enter into a determination of whether failure to obtain a warrant is justified, there is no reason to elevate it to a blanket exception (People v Clark, 45 NY2d 432, citing Preston v United States, 376 US 364; and People v Spinelli, 35 NY2d 77). By thus substituting an inflexible label for a varying condition, our court makes of “[t]he word ‘automobile’ *** a talisman in whose presence the Fourth Amendment fades away and disappears” (Coolidge v New Hampshire, 403 US 443, 461-462). Suffice it to say that the underlying questions that should always be answered, and answered separately in each case, are whether there was probable cause to search and, if there was, whether an exigency compelled such immediacy that a warrant was excused. Absent either, suppression should follow, irrespective of the locus.
The danger of a broadbrush exception approach is evident in this case. The odor of marihuana and the presence of the exposed marihuana envelope could lay the founda *67 tion for a finding of reasonable cause that the zippered pockets of the jacket, which gave it the functional character of a container, concealed more of this or like contraband. However, the officer easily could have taken possession of the garment and, thus, by maintaining it in its original zippered state, protected its contents from possible destruction or disappearance. Lacking any exigency, it therefore would have been a simple matter to protect the legitimate interest of the State in the investigation of crime while yet safeguarding the privacy interest of the defendant. Moreover, this would have been equally true, it seems to me, whether the zippered jacket had been found on the back seat or in the baggage compartment.
But the majority here, while it would prohibit such warrantless invasions of containers carried in a motor vehicle’s trunk, condones the opening of closed containers found in a passenger compartment. I must confess I can see no logical reason for such a holding — that is, unless privacy requires “two layers”, a trunk plus a container. Once an individual has concealed an object in a closed, opaque container, the constitutional protection of a warrant must be afforded.[12]
It is also significant that, earlier this year, when we had occasion to deal with a “container” — there an opaque cigarette case found in the passenger compartment of a car — since the automobilist had been arrested and the car itself taken into the possession of the police, we had no trouble with the position I now espouse, unanimously declaring that “[i]t is now clear that even in cases where the seizure is based on probable cause to believe that the item taken from a vehicle contains contraband or evidence of a crime, the right to seize does not include the right to conduct a warrantless search of its contents, absent exigent circumstances (Arkansas v Sanders, supra; see, also, United States v Chadwick, supra; cf. Walter v United States, 447 US 649)” (People v Roman, 53 NY2d 39, 42).
*68 No one then suggested that it represented a grant of greater protection than that which our Constitution demands. True, the Supreme Court, in its Belton-Robbins decisions, now seems to beat a retreat from what it had to say in Sanders only yesteryear. But I am under the impression that the reason we now resort to our State Constitution is that New York’s constitutional principles are at odds with the Supreme Court’s Belton rationale. It thus is dismaying that, armed with our Constitution, we now ally ourselves with forces which move away from Sanders and from Roman. I repeat: another “bright-line rule”, substituting omnibus declaration for particularized analysis of individual cases, does just that.
It is for all these reasons, that I once again would reverse the order of the Appellate Division, grant the motion to suppress and dismiss the indictment.
Judges Jones, Wachtler and Meyer concur with Chief Judge Cooke; Judge Gabrielli concurs in a separate opinion in which Judge Jasen concurs; Judge Fuchsberg dissents and votes to reverse in another opinion.
On reargument, following remand by the Supreme Court of the United States, order affirmed.

. Section 12 of article I provides: “The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized”.

. After each of the four occupants of the motor vehicle had been searched, at the direction of the officer each was placed at a separate portion of the highway. No ingenuity was required for the armed arresting officer to secure the automobile and its contents in this case. Among ready alternatives, he simply could have taken the keys from the driver, locked the stopped vehicle, locked the arrestees in his patrol car and taken them to the station house until the search warrant was obtained.

. For instance, article XIV of the Massachusetts Declaration of Rights, adopted in 1780, declared that “Every subject has a right to be secure from all unreasonable searches, and seizures of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities, prescribed by the laws”. (1 Schwartz, The Bill of Rights: A Documentary History, at p 342.)
Although New York’s Constitution did not contain a provision against unreasonable searches and seizures until 1938, New York’s concern for the guarantee of this individual liberty was made exceptionally plain in 1787 when it ratified the Federal Constitution. It prefaced its ratification with a declaration of rights which it regarded as being implicit in the Constitution. Included was the following search provision: “That every freeman has a right to be secure from all unreasonable searches and seizures of his person, his papers, or his property; and therefore, that all warrants to search suspected places, or seize any freeman, his papers or property, without information, upon oath or affirmation, of sufficient cause, are grievous and oppressive; and that all general warrants (or such in which the place or person suspected are not particularly designated) are dangerous, and ought not to be granted.” (See Temporary State Commission on the Constitutional Convention of 1967, Pamphlet 7 [Individual Liberties], at p 47.)

. That this evaluation enjoys as contemporary a validity as it does an historical one is certified by the following statement in the latest year-end report on the judiciary issued by the Chief Justice of the United States Supreme Court on December 28,1981: “State courts are estimated to handle over ninety-five percent of all the litigation that goes to trial in the United States. They are responsible for first resolving issues arising under their constitutions and statutes and then for passing on matters concerning federal law. It is not surprising that the public’s perceptions of the quality of justice in the United States is largely determined by the quality of justice in the state courts”.

. Even for the nonce, the end may not yet be in sight. As the majority notes (its n 3), figuratively almost before the ink has dried in Robbins v California (453 US 420), the Supreme Court, in granting certiorari in United States v Ross (655 F2d 1159), already has requested counsel to address the issue of whether Robbins should be reconsidered (454 US 891).

. Probable cause for Belton’s arrest was based on the presence in the car of a smell of burnt marihuana and of a single envelope marked “supergold”, in which that substance is commonly purchased. Inspection of the envelope’s contents revealed “a small amount of marihuana” (People v Belton, 50 NY2d 447, 449).

. Not of moment to Justice Stewart was the “personal” or “impersonal” nature of 1 the container (Robbins v California, supra, at p 426). He would make no distinction between them.

. In part, Justice Brennan states (453 US 454, 469-470) the “problems” he foresees as follows: “Thus, although the Court concludes that a warrantless search of a car may take place even though the suspect was arrested outside the car, it does not indicate how long after the suspect’s arrest that search may validly be conducted. Would a warrant-less search incident to arrest be valid if conducted five minutes after the suspect left his car? Thirty minutes? Three hours? Does it matter whether the suspect is standing in close proximity to the car when the search is conducted? Does it matter whether the police formed probable cause to arrest before or after the suspect left his car? And why is the rule annouhced today necessarily limited to searches of cars? What if a suspect is seen walking out of a house where the police, peering in from outside, had formed probable cause to believe a crime was being committed? Could the police then arrest that suspect and enter the house to conduct a search incident to arrest? Even assuming today’s rule is limited to searches of the ‘interior’ of cars — an assumption not demanded (by logic — what is meant by ‘interior’? Does it include locked glove compartments, the interior of door panels, or the area under the floorboards? Are special rules necessary for station wagons and hatchbacks, where the luggage compartment may be reached through the interior, or taxicabs, where a.glass panel might separate the driver’s compartment from the rest of the car? Are the only containers that may be searched those that are large enough to be ‘capable of holding another object’? Or does the new rule apply to any container, even if it ‘could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested’?”

. “The Justices’ opinions exhibit the chronic lack of agreement that has come to plague fourth amendment jurisprudence” (The Supreme Court, 1980 Term, Search and Seizure, 95 Harv L Rev 251, 253).

. The warrant requirement is a guide, not a deterrent, to appropriate and efficient police action. As such, it separates the pursuit of crime and the criminal from the innocent and the law-abiding, who otherwise could be ravaged by a police state. As the Supreme Court itself has put it, “the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make * ** * a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law” (McDonald v United States, 335 US 451, 455).

. (See, generally, Wilson, The Warrantless Automobile Search: Exception Without Justification, 32 Hastings LJ 127, esp at pp 130-132, 158-159; Note, Warrantless Searches and Seizures of Automobiles, 87 Harv L Rev 835.)

. Of course, not all containers deserve the full protection of the warrant requirement. Their configuration, transparency or other identity-revealing characteristic may signal a disinterest in privacy. So, “some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to ‘plain view,’ thereby obviating the need for a warrant” (Arkansas v Sanders, 442 US 753, 764-765, n 13, supra).