OPINION OF THE COURT
Kaye, J.
A police officer’s nonconsensual entry into an individual’s automobile to determine the vehicle identification number violates the Federal and State Constitutions where it is based solely on a stop for a traffic infraction (US Const, 4th Arndt; NY Const, art I, § 12).
On May 11, 1981, in the late afternoon, Police Officers Lawrence Meyer and William McNamee observed defendant driving 5 to 10 miles per hour above the speed limit, in a car with the windshield cracked on the passenger side. The officers drove alongside defendant’s car and instructed him to pull over. Defendant followed this directive, emerged from his car and approached Officer Meyer, the driver of the police car. He provided Meyer with his registration and proof of insurance but stated that he did not have a driver’s license in his possession. Meanwhile, Officer McNamee had gone directly to defendant’s car, opened the door and checked the left door jamb for the vehicle identification number (VIN). Since the VIN was not located on the door jamb, McNamee reached in and moved papers on the dashboard to enable him to view the VIN. In doing so, he saw a handle of a gun protruding from underneath the seat, seized it, and defendant was promptly arrested.
*494 The hearing court denied defendant’s motion to suppress the gun. Although the court concluded that the officers had “no reason to believe the vehicle * * * was stolen” when defendant was stopped, it found their action reasonable in light of defendant’s “immediately exiting the car and walking over to the police car, instead of waiting in his automobile, coupled with the fact that the defendant did not have a driver’s license in his possession”. Defendant then pleaded guilty to criminal possession of a weapon in the third degree and was sentenced to five years’ probation. On appeal to the Appellate Division, the four-Justice majority affirmed, without opinion. The dissenting Justice found the search impermissible because “there was absolutely no predicate for believing the car was stolen.” (97 AD2d, at p 742.)
VIN inspections typically involve opening a car door to locate the VIN on the doorpost, opening the hood to locate the VIN on the engine, or looking for the hidden VIN in obscure parts of an automobile. While this court has not previously considered the legality of such inspections conducted without consent, lower courts in this State, as well as courts in other jurisdictions, have approached the question from divergent perspectives. Initially, courts are divided on the threshold issue of whether a VIN inspection constitutes a search.[1] On the facts presented by this appeal, we conclude that a search was conducted.
The Fourth Amendment “protects people from unreasonable government intrusions into their legitimate expectations of privacy” (United States v Chadwick, 433 US 1, 7; see, also, Katz v United States, 389 US 347; People v Perel, 34 NY2d 462, 466). One has no legitimate expectation of privacy in locations in a car which are observable by passersby. Accordingly, an officer’s simply peering inside an automobile does not constitute a search and the Fourth *495 Amendment consequently does not limit this activity (Texas v Brown, 460 US 730; People v Cruz, 34 NY2d 362, 370). But there are many places inside a car — including the area underneath the seats — which cannot be viewed from the outside and which an individual legitimately expects will remain private. The government intrusion here, Officer McNamee’s opening the door and reaching inside, was undertaken to obtain information and it exposed these hidden areas. It therefore constituted a search (cf. United States v Place, 462 US 696; People v Miller, 43 NY2d 789, affg 52 AD2d 425, 428; People v Sullivan, 29 NY2d 69).[2]
The absence of any legitimate expectation of privacy in the VIN itself is not determinative of the issue presented. The fact that certain information must be kept, or that it may be of a public nature, does not automatically sanction police intrusion into private space in order to obtain it. In particular, the existence of a VIN on every automobile cannot enable police, without any basis, to make “wholesale entries of cars on nothing more than a hope that one of them might turn out to be stolen.” (1 LaFave, Search and Seizure, § 2.5, p 360.)[3]
A VIN inspection normally involves a lesser invasion of privacy than a full-blown search because of the fixed, known and readily accessible location of the VIN on the automobile. Additionally, there is a compelling police interest, in situations such as automobile thefts and accidents, in the positive identification of vehicles. Consequently, it may well be that some lesser justification than probable cause would be appropriate. However, it is unnecessary in this case to determine whether probable cause or a lesser justification should have been required to support the search, because here there was no semblance of either. The trial court based its apparent finding of reasonable suspicion to believe the car was stolen on two factors: *496 defendant’s exiting the vehicle and approaching the officers, and his failure to produce a driver’s license. But a driver’s emergence from a car upon being stopped by police is not indicative of criminal activity. Nor was reliance properly placed by the court on defendant’s failure to produce a license because McNamee, having proceeded directly to defendant’s car, was not even aware of that fact when he entered the automobile. Since competing inferences cannot reasonably be drawn from the undisputed facts presented, the hearing court erred as a matter of law in finding reasonable suspicion to believe the car was stolen (see People v Harrison, 57 NY2d 470, 477). The facts reveal no reason for the officer to suspect other criminal activity or to act to protect his own safety (compare People v David L., 56 NY2d 698, cert den 459 US 866). The sole predicate for the officer’s action here was defendant’s commission of an ordinary traffic infraction, an offense which, standing alone, did not justify the search (cf. People v Marsh, 20 NY2d 98).
Some lower court cases in New York have interpreted subdivision 4 of section 401 of the Vehicle and Traffic Law as authorizing VIN inspections (see, e.g., People v Gohn, 49 AD2d 585; People v Frank, 61 Misc 2d 450; People v Goldstein, 60 Misc 2d 745). That section provides, in pertinent part: “Carrying certificate of registration. Every person operating a motor vehicle or a motor vehicle and a trailer, registered or transferred in accordance with any of the provisions of this chapter, shall upon demand of any magistrate, motor vehicle inspector, peace officer, acting pursuant to his special duties, or police officer produce for inspection the certificate of registration or the registration renewal stub for such vehicle and shall furnish to such magistrate, inspector, officer or police officer any information necessary for the identification of such vehicle and its owner, and all information required concerning his license to operate, if he is required by law to have such a license, and shall, if required, sign his name in the presence of such magistrate, inspector, peace officer or police officer as a further means of identification.”
In section 401, however, the Legislature has seen fit only to authorize an officer to demand information necessary to identify the car, as he may demand the certificate of *497 registration for the vehicle.[4] No basis has been shown for ignoring this legislative direction. Here, had the officer complied with the statute and demanded exhibition of the VIN, defendant could have avoided the intrusion on his privacy interests by simply moving the papers on the dashboard, thereby facilitating the Officer’s observation of the VIN through the windshield. Section 401, therefore, provided no justification for the officer’s entry of defendant’s car.
Accordingly, the order should be reversed, the motion to suppress granted, the conviction vacated and the indictment dismissed.

. Compare, for example, United States v Polk (433 F2d 644); United States v Johnson (413 F2d 1396, affd en banc 431 F2d 441); Cotton v United States (371 F2d 385); People v Valoppi (61 Mich App 470); and People v Hart (75 Misc 2d 908), with United States v Powers (439 F2d 373, cert den 402 US 1011); Simpson v United States (346 F2d 291); State v Moore (_Hawaii_, 659 P2d 70); People v Piper (101 Ill App 3d 296); and State v Simpson (95 Wn 2d 170). Though not treating a VIN inspection as a search, some courts have limited the officers’ right to check the VIN “to those cases in which there is a legitimate reason to do so” (see, e.g., Cotton v United States, 371 F2d 385, 393, supra), The basis for imposing this limitation is not clear.

. Although the gun was “protruding” from underneath the seat, Officer McNamee first observed it while conducting the search. The only question, then, is whether the officer had a right to be in the position from which he made his observation.

. We are not confronted with a governmental intrusion so circumscribed as to expose only information or articles in which there is no legitimate expectation of privacy (compare United States v Place, 462 US 696; Smith v Maryland, 442 US 735). Nor are we concerned here with an inventory of an impounded car.

. No suggestion has been made that the police without basis could search the person of the driver or the interior of the vehicle to obtain a registration certificate, yet the statutory provision is no different for the VIN and the certificate of registration; in both instances the information must be provided on demand of a police officer.