OPINION OF THE COURT
Anne G. Feldman, J.
Defendant stands charged under Penal Law § 165.50 with criminal possession of stolen property in the first degree — a black Ford van. He moves to suppress evidence of inconsistent vehicle identification numbers (VIN’s) on that van, discovered during an inspection of it by officers from the police department’s Auto Squad. After conducting a hearing and reviewing counsels’ submissions, I find the van inspection did not violate the defendant’s rights under either the Federal or State Constitution. Accordingly, defendant’s motion to suppress is denied.
Uncontested testimony establishes the following chronology of events: The police department’s Safe, Loft and Truck Unit had had defendant under surveillance for three or four months. On the afternoon of February 13, 1984, two officers from the police department’s Safe, Loft and Truck Unit followed him as he drove a black Ford van. At approximately *1065 3:00 p.m., at the intersection of 14th Avenue and 39th Street in Brooklyn, the defendant double-parked, alighted from the van, approached the officers in their car, and asked why they were following him. Detective Keenan, one of the officers, asked defendant for his license and registration. He told the officers that he did not have his license with him and that he had purchased the van from a friend named Angel Tirado, who, he said, had moved to Puerto Rico. The officers then took the defendant and the van into the station house, arriving there shortly before 3:30 p.m.
Either at the station, or en route, defendant told Keenan that he knew of a corrupt officer in Keenan’s unit. Defendant indicated that, for a fee, he would reveal that officer’s identity. Keenan notified his supervisor, who said he would arrange to have a member of the department’s Internal Affairs Division (I.A.D.) talk to defendant about these allegations.
Shortly after defendant’s arrival at the precinct, his wife arrived with documentation that revealed the van’s title, registration and insurance certificates were in the name of Angel Tirado. The portion of the title certificate entitled "Transfer by Owner” bore the signature "Angel Tirado”. However, none of the items pertaining to the purported transferee’s identity were filled in, and neither of the other forms concerning the van’s ownership indicated a transfer to the defendant.
At approximately 5:05 p.m., Detective Keenan’s supervisor arrived at the precinct and began to question the defendant concerning his corruption allegations. Fifteen or 20 minutes later, a member of I.A.D. arrived to complete the questioning.
At about 5:35 p.m., an officer from the police department’s Auto Squad arrived and located the confidential VIN on the van’s underside. This hidden VIN, which, it was discovered, differed from the public VIN, identified the van as a stolen vehicle. At approximately 6:00 p.m., the police arrested the defendant, who was still at the station house.
There is a sharp conflict between the testimony of the police officers and defendant as to what happened at the precinct after defendant’s wife arrived with the vehicle documents. Keenan testified that between 3:45 and 4:15 that afternoon he wrote out and gave to defendant several traffic summonses, including citations for double-parking and for driving without proper documentation. He stated that although the defendant was then free to leave, he nonetheless remained voluntarily at the station awaiting the arrival of the I.A.D. investigators. *1066 The defendant asserts that he received no summonses that day, and that when on several occasions he asked whether he could leave, Detective Keenan told him that he had to remain until the summonses were completed. Defendant contends that the police deliberately delayed issuing the summonses as a pretext for keeping him in the station until they had an opportunity to search for incriminating evidence.
I find credible the defendant’s version of the events at the station house. His contention that he waited there without receiving the summonses is corroborated by the summonses themselves, which are dated February 14, 1984 — the day after defendant’s arrest. However, this finding on credibility does not impact upon my decision. Defendant’s unlawful detention at the precinct is not at issue, since he does not seek suppression of any statement.
The relevant question before me is whether, under the circumstances, the police were justified in holding the van and inspecting it without first securing a search warrant.
The police initially brought the defendant to the station house to issue traffic summonses. While the infractions charged may support a custodial arrest (Vehicle and Traffic Law § 155; CPL 140.10), the police did not arrest the defen-. dant for these offenses. Therefore, no search of the defendant or the van would have been justified as incident to an arrest (People v Evans, 43 NY2d 160, 166 [1977]). Nor did the officers at the scene have probable cause to search the van merely because the defendant did not carry proper documentation (cf. People v Robinson, 36 AD2d 375, 376 [2d Dept 1971]; see also, n 4, infra).
However, the officers’ initial seizure of the van was proper. The defendant, without license or proof of ownership, could not lawfully drive the illegally parked vehicle. Accordingly, the police properly removed it from the flow of traffic (United States v Ochs, 461 F Supp 1 [SDNY 1978]).
Once at the station, the defendant was unable to prove his ownership of the vehicle. Nor did he indicate that, given an opportunity, he could do so.
New York law is very specific in its requirements concerning motor vehicle ownership and transfer. Private owners of motor vehicles must obtain certificates of title in their own names (Vehicle and Traffic Law § 2104). To transfer ownership, the vehicle owner must execute a written assignment of title on the certificate of title itself (Vehicle and Traffic Law *1067 § 2113 [a]).[1] "[P]romptly after delivery”, the new owner must apply for a new certificate of title (Vehicle and Traffic Law § 2113 [b]).[2]
Defendant here offered no explanation for his failure to take any of these required steps. This failure to comply with rules governing this heavily regulated activity diminished his expectation of privacy in the vehicle’s identifying information, and gave the police a reasonable basis to further inspect his vehicle.
The search they conducted was the least intrusive method of reliably verifying the van’s ownership.[3]
The Legislature has specifically required vehicle manufacturers to place VIN’s on each vehicle and to inform the Motor Vehicle Commissioner of VIN locations on every vehicle sold in the State (Vehicle and Traffic Law § 431). The manifest intent of these provisions is (1) to ensure that each vehicle sold in this State carries at least one identifying mark which is beyond the reach of those who would alter it to conceal theft, and (2) to make this information available to the authorities. The police action here, locating and comparing the VIN’s, was tailored to obtain only that information legislatively mandated for vehicle identification.
Police inspection of the public VIN located on a car’s dashboard has been held to constitute a search (People v Class, 63 NY2d 491 [1984]). However, the court in Class recognized *1068 that a VIN inspection normally involves a lesser invasion of privacy than a full-blown search. In noting as well the compelling public interest, that police be permitted to investigate the ownership of possibly stolen vehicles, the court said: "Consequently, it may well be that some lesser justification than probable cause would be appropriate” (People v Class, supra, p 495).[4]
The US Constitution 4th Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy.” (United States v Chadwick, 433 US 1, 7 [1977].) " '[It] does not require that every search be made pursuant to a warrant * * * The relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances’ ” (South Dakota v Opperman, 428 US 364, 372-373 [1976], quoting Coolidge v New Hampshire, 403 US 443, 509 [1971] [Black, J., concurring and dissenting]). The reasonableness of a search and seizure depends on the facts and circumstances of each case (Cooper v California, 386 US 58, 59 [1967]; see, People v Class, 63 NY2d 491, 494-495, supra [1984]).
Under the circumstances of this case, the police search was reasonable and justified.
Therefore, defendant’s motion is denied.

. Defendant contends that the signature "Angel Tirado” on the transfer portion of the certificate of title constitutes a valid transfer by bearer paper. However, the transfer portion provides for the transferee’s signature, name, address, and the date of sale, none of which had been supplied. The certificate also explicitly states that both Federal and State regulations require the transferor to include, in the space provided, the mileage reading as of the sale date. This information is also lacking.
The Court of Appeals, interpreting Vehicle and Traffic Law § 2113, has held that the certificate of title "although a title document in a broad sense” is not such within the meaning of the Uniform Commercial Code, and hence is not bearer paper (Dairylea Coop. v Rossal, 64 NY2d 1, 12 [1984]). Thus, the signature "Angel Tirado”, standing alone, does not constitute an effective transfer of title.

. Certificates of title are the basic ownership documents for these motor vehicles (15 NYCRR 20.1). Before they may receive this certificate, individuals must satisfy the Department of Motor Vehicles that they are the lawful owners (Vehicle and Traffic Law § 2111).

. Defendant’s own words and actions made the type of inspection conducted here the only feasible means of ascertaining ownership. Angel Tirado, according to defendant, was somewhere in Puerto Rico, beyond easy reach for verification.

. In People v Class (63 NY2d 491, 495) the court found the officer who searched for the VTN had "no semblance” of any factual basis to conduct any investigation. The police had pulled defendant’s car over after observing him drive 5 to 10 miles over the speed limit. While defendant was giving one officer his registration and proof of insurance, a second officer was examining both the vehicle’s door jamb and dashboard in an effort to locate the VIN. The court held the search unreasonable, because at the time it occurred, the officer acted without knowledge that the defendant had been unable to produce a driver’s license.
Class (supra) does not resolve the question of whether VIN searches require a full "probable cause” justification. Justice Jones’ dissent cites authority suggesting they do not (People v Class, 63 NY2d, at pp 498-499, nn 1-2). The majority did not reach the trial court’s justification for the VIN inspection — the defendant’s failure to produce a license. The court, instead, found that because the inspecting officer was unaware of the conversation between his partner and defendant, there was no justification for the search. Although in my view this defendant’s inability to produce documentation at the scene would not have supported a VIN inspection, the holding in Class does not compel this conclusion.