THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID CAMPBELL, Appellant.

First Department, December 11, 1986

### APPEARANCES OF COUNSEL

*Edward Cohn* of counsel *(Bobick, Joelson & Rochkind,* attorneys), for appellant.

*Lisa M. Rubin* of counsel *(Steven R. Kartagener* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

Defendant appeals from a judgment convicting him, after a jury trial, of criminal possession of a weapon in the third degree and sentencing him as a second felony offender to an indeterminate term of 2½ to 5 years' imprisonment.

Defendant was indicted for possession of a weapon in the third degree and illegal possession of a vehicle identification number (VIN) plate. After a *Mapp/Huntley* hearing, defendant's motion to suppress a gun and certain statements was denied (Herbert Shapiro, J.). The trial court granted defendant's motion to dismiss as to the illegal possession of a VIN plate and submitted only the weapon count to the jury, which returned a verdict of guilty. On this appeal, we are concerned only with the denial of the suppression motion, which was premised solely on the police officer's testimony.

On February 10, 1984, at approximately 2:40 P.M., Officers Martinosky, Semelmaker and Marziliano, who were on plainclothes patrol on Southern Boulevard in The Bronx, noticed what appeared to be an automobile repair shop which had no identifying signs or registration numbers in front. They observed three men working on a red BMW in the driveway between the shop's garage door and the curb. The car was facing into the shop and its hood and doors were open.

The officer testified that because "[m]any foreign cars have been stolen in the Bronx area, and [there were] males working on it", the officers stopped to "see if they had their licenses up to date, whose car they were working on." Martinosky initially noted that the car appeared not to have a Federal emissions standard sticker, which is usually located on the

driver's door below the lock. The sticker was present but was not immediately visible because it was covered with paint.

Martinosky inquired as to the ownership of the car. Defendant responded that it belonged to his wife, and in compliance with the officer's request he produced a registration certificate which indicated that Julie Campbell owned the vehicle. The officer then leaned into the vehicle to check its VIN against that which appeared on the registration. Although the numbers matched and the VIN digits did not appear to have been altered, the plate had an indentation on the side which the officer interpreted as evidence of possible tampering.

The officer next checked the engine compartment to verify that the engine number was the same as the VIN. This number appeared to have been filed off. He continued his search and found numbers matching the VIN on the side of the fender lip. He searched further within the engine compartment, looking for "[s]omething to identify the year of the car." In so doing, he moved a right-hand black glove which felt as though it contained a gun.

Martinosky removed a loaded .32 Colt automatic which contained nine rounds of ammunition. After unloading it, he asked whose it was. Defendant responded that it was his, and he was placed under arrest. The matching left-hand glove was found on the dashboard inside the car. After defendant's arrest, he was given *Miranda* warnings, which he indicated that he understood. Defendant then told Martinosky that he had purchased the gun on the street for $100 for his personal protection. He stated that he bought the car and registered it in his wife's name, and that it was just as he had purchased it, except that it had had a paint job.

Finding Martinosky a credible witness, the hearing court denied defendant's motion to suppress, because "the investigation * * * is more akin to inspections routinely permitted in highly regulated businesses as opposed to the warrantless search of a vehicle." The court further noted that the "auto repair business may well be regarded as a highly regulated business and as such, may be subject to warrantless inspections". Although there is no support for this conclusion in the record, the court found that the vehicle was being repaired in violation of New York City Traffic Regulations § 81 (a) (1), since the vehicle was on a public sidewalk and its hood was open. The court concluded that "Any member of the public, (including Officer Martinofsky *[sic]*) had a right to pass by and observe the opened engine compartment and its contents."

The court found the initial inquiry, as to whose gun it was, to be proper because the people being addressed were not in custody. The subsequent statements by defendant were made after proper *Miranda* warnings and waiver.

Although, on the trial, defendant's witnesses testified that the order of events was other than that testified to by the officers at the *Mapp/Huntley* hearing, we are not concerned on this appeal with that testimony. Rather, the issue is whether the warrantless search of defendant's automobile violated his 4th Amendment rights. The court relied upon the concept that the search was appropriate because it was "more akin to inspections routinely permitted in highly regulated businesses as opposed to the warrantless search of a vehicle."

This type of warrantless search for evidence of a crime prompted the Court of Appeals to declare facially unconstitutional Vehicle and Traffic Law § 415-a (5) (a) and New York City Charter § 436, which permitted warrantless inspection of junkyards and other dismantling businesses storing used, discarded or second-hand merchandise *(People v Burger,* 67 NY2d 338). There, officers from the same unit entered a junkyard where cars were dismantled and the parts sold. In the absence of a license to dismantle vehicles and the required "police book" or any other record of the vehicles and parts, the officers began to inspect the vehicles for VIN numbers. After determining that a couple of cars had been stolen, the police arrested the owner who was charged with criminal possession of stolen property and Vehicle and Traffic Law violations. In declaring the statute unconstitutional and granting defendant's motion to suppress, the Court of Appeals held (at p 343): "[A]n administrative search must serve an administrative purpose; when designed instead to uncover evidence of a crime the traditional requirements of the Fourth Amendment apply".

In our case, it is plain that the check of the vehicle and inspection for the VIN were made without any inquiry as to whether the establishment was licensed, or why no registration numbers were displayed. It was plainly a warrantless search for evidence of a crime, not an administrative search. As *Burger (supra)* holds, the search must pass 4th Amendment muster, applicable to commercial as well as other premises, including automobiles.

As stated in *People v Pace* (65 NY2d 684, 686, *affg* 101 AD2d 336), "The warrantless search of defendants' automobile sal-

vage yard was not undertaken for administrative purposes. Thus, New York City Charter § 436 is inapplicable, and the evidence obtained must be suppressed as acquired in violation of the constitutional proscription against unreasonable searches and seizures." The warrantless search conducted here simply cannot be justified as an administrative search.

There is also no merit to the other theory upon which the hearing court relied. The court ruled that there was no reasonable expectation of privacy because the car was parked on a public sidewalk with its hood open so that any passerby could observe the engine compartment and its contents. The officer's testimony was that it was parked in the shop's driveway, facing inward. However, even if the compartment was open to public view, the gun seized was plainly not in public view. The officer himself testified that he searched around twice in the compartment, at two places where numbers are usually found, before moving the glove which contained the weapon. There was no justification for the level of intrusion, under the circumstances.

As we have been instructed in *People v Class* (63 NY2d 491, *revd* 475 US —, 106 S Ct 960, *on remand* 67 NY2d 431), checking for a VIN does not authorize the police to make wholesale entries of cars on nothing more than a hope that one of them might turn out to be stolen. There, a traffic stop was involved. In an attempt to check the VIN, the police officer reached into the car and moved papers on the dashboard to observe another area in which the VIN might be located. In doing so, he observed a gun handle protruding from under the seat and seized it. Reversing the conviction, in a decision adhered to subsequently on remand, the Court of Appeals stated (63 NY2d, at p 495): "The absence of any legitimate expectation of privacy in the VIN itself is not determinative of the issue presented. The fact that certain information must be kept, or that it may be of a public nature, does not automatically sanction police intrusion into private space in order to obtain it. In particular, the existence of a VIN on every automobile cannot enable police, without any basis, to make 'wholesale entries of cars on nothing more than a hope that one of them might turn out to be stolen.' (1 LaFave, Search and Seizure, § 2.5, p 360.)"

No violation of law attributable to defendant was observed prior to the search of the automobile. Rooting about within the engine compartment was completely unjustified and unnecessary. It is notable that in *Class (supra),* the Supreme

Court stated that the officer there "did not root about the interior of the * * * automobile" or reach into compartments or open up containers (475 US, at p —, 106 S Ct, at p 968). The People have failed to satisfy their burden of going forward to demonstrate the legality of the search in the first instance. The warrantless search was not justified *(People v Berrios,* 28 NY2d 361, 367). Although a motor vehicle is generally afforded a lesser degree of 4th Amendment protection than is other property, "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *(Coolidge v New Hampshire,* 403 US 443, 461-462.)

There is no merit to the People's argument, raised for the first time on appeal, that defendant had no standing to contest the search. His production of documents and his statements that the car belonged to his wife established sufficient dominion and control to give him standing *(People v Gonzalez,* 115 AD2d 73, 77-79). The motion to suppress the gun should have been granted.

With respect to the motion to suppress defendant's statements, the officer's initial inquiry was appropriate, since it was addressed to all three men. At that stage, no one was in custody or under arrest and the police could appropriately make a general inquiry without prior *Miranda* warnings *(People v Huffman,* 41 NY2d 29). The statements made subsequent to the *Miranda* warnings were similarly proper, as voluntary. However, since all of the statements resulted from an initial police illegality, viz., the warrantless search, they should be suppressed as the fruit of a poisonous tree *(Wong Sun v United States,* 371 US 471). The suppression motion should be granted in its entirety.

Accordingly, the judgment of Supreme Court, Bronx County (Murray Koenig, J.), rendered January 3, 1985, should be reversed, on the law and the facts, and the sentence vacated; the motion to suppress should be granted, and the indictment dismissed.

ASCH, J. P., MILONAS, ROSENBERGER and WALLACH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on January 3, 1985, unanimously reversed, on the law and the facts, and the sentence vacated, the motion to suppress granted, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the

accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50, as in the interest of justice is required.