■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD HUNT, Appellant.—Judgment unanimously reversed on the law, defendant's motion to suppress granted and new trial granted. Memorandum: On August 4, 1985, an unidentified male told Officer William Benwitz that he had seen a prowler climbing into a window on an upper floor at a rooming house located at 119 State Street. A description of the prowler was given to Benwitz who then went to the house to search for the prowler. While police were searching the upper floor, the alarm to the lower rear door to Pindle Alley went off. Benwitz broadcast the above information, including the direction in which the suspect may have fled, over the police radio. Officer Thomas Wilson heard the broadcast and went immediately to the area of Pindle Alley where the suspect was expected to travel. Wilson saw a black male matching the general description given in the broadcast traveling along the

expected route. Wilson told defendant that someone had just been inside an apartment at 119 State Street without permission and that defendant would be taken to the scene for identification purposes. The witnesses at that building stated that they could not identify defendant as the prowler because "[they] had only a good look from the back of him". Defendant was not released but was placed in a police car and taken to a police station for questioning concerning "a series of crimes that had been taking place at 119 State Street". Defendant was *Mirandized* and questioned for approximately two hours and 10 minutes; he denied that he had participated in a robbery at 119 State Street but said that he had witnessed a robbery at that address on July 26, 1985. Defendant was again taken to 119 State Street. While defendant was in the hallway, the eyewitnesses to the July 26, 1985 robbery returned to their apartment. As they walked past defendant, both witnesses identified him as the person who had committed the July 26 robbery. Defendant was indicted for the crimes of robbery in the third degree and grand larceny in the third degree arising out of that incident. He was not charged with any crime that occurred on August 4, 1985.

Defendant contends that the suppression court erred in failing to suppress his identification and statement because, once the witnesses were unable to identify him as the prowler, he should have been released and that when the police transported him to the police station for further interrogation regarding an unrelated series of crimes, that action constituted a de facto arrest without probable cause. We agree.

When the witnesses were unable to identify defendant as the prowler at 119 State Street, the police should have released him *(see, People v Hicks,* 68 NY2d 234). The conduct of the police in placing defendant in a police vehicle, transporting him to a police station and interrogating him for over two hours regarding crimes unrelated to the charge for which he had been detained in the first instance constituted a de facto arrest which required probable cause *(see, People v Carrasquillo,* 54 NY2d 248, 254; *People v Rivers,* 129 AD2d 983, 985). In determining whether a de facto arrest has taken place, the court must look to "what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position" *(People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851). Here, it is clear that defendant was in custody when the police extended his detention and took him from 119 State Street to the police station. Indeed, the suppression court concluded as much when it said "both the identification and

the statements depend upon the finding of probable cause". Moreover, we reject the suppression court's use of the pervasive "totality of circumstances" test for determining probable cause. The use of that test is inappropriate because a probable cause determination is of constitutional dimension and must be supported by "articulable facts, credible objective evidence and the rational inferences that flow therefrom" *(People v Hicks, supra,* at 243; *see also, People v Cantor,* 36 NY2d 106, 113-114). Because defendant's de facto arrest was not based upon probable cause, the fruits of that illegal arrest must be suppressed. Defendant's statements to the police and the subsequent identification of defendant flowed directly from the illegal arrest and it cannot be said that they were "the product of a source independent of the defendant's detention" or that the illegal activity was attenuated " 'by a significant intervening event which justified the conclusion that that evidence was not the product of that illegal activity' " *(People v Parris,* 136 AD2d 882, quoting *People v Rogers,* 52 NY2d 527, 533, *cert denied* 454 US 898; *see also, Wong Sun v United States,* 371 US 471).

Since there may be a new trial, we note that it was error for the prosecutor to ask the witness Glady whether she was afraid to make an in-court identification of defendant and the court should have given a prompt curative instruction *(see, People v VanDusen,* 132 AD2d 974).

We have reviewed defendant's remaining contentions and we find them to be lacking in merit. (Appeal from judgment of Monroe County Court, Marks, J.—robbery, third degree; grand larceny, third degree.) Present—Dillon, P. J., Green, Pine, Balio and Davis, JJ.