■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES MANGANARO, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Fisher, J.), dated October 15, 1990, which granted the defendant's motion to suppress certain physical evidence *(see, People v Manganaro,* 148 Misc 2d 616).

Ordered that the order is reversed, on the law, and the motion is denied.

On December 13, 1989, a police officer approached the passenger side of a 1979 Ford which was parked on 50th

Avenue between 46th and 47th Streets in Queens. The officer looked in the window on the passenger side of the car and observed six hypodermic needles and a tinfoil packet which he believed to contain cocaine. The officer walked around to the driver side of the vehicle, asked the defendant to step out, and then placed him under arrest. The contraband which the officer had seen moments before was then seized.

The Supreme Court granted the defendant's motion to suppress this evidence, holding that "a purposeful, visual search of the interior of an occupied vehicle is an intrusion upon the privacy of its occupants, albeit a minimal one, and as such requires some justification" *(People v Manganaro, supra,* at 623). Finding that the presence of the vehicle in a drug-infested neighborhood was not sufficient "justification", the court stated that the officer in question acted improperly when he looked into the window of the defendant's car, and therefore that the contraband had been seized as the result of an illegal search. We now reverse.

No search or seizure within the meaning of the New York State or Federal Constitutions (US Const 4th, 14th Amends; NY Const, art I, § 12) occurred in the present case until the defendant was ordered to step out of his car and was arrested. The conduct of the police officer which led up to that arrest, that is, his walking toward a parked car and his looking through one of its windows, did not constitute a search within the meaning of the New York State or Federal Constitutions *(see, e.g., Texas v Brown,* 460 US 730, 740; *People v Class,* 63 NY2d 491, 494-495, *revd on other grounds* 475 US 106; *People v Cruz,* 34 NY2d 362, 370; *see also, People v Maltese,* 149 AD2d 626; *People v Alberti,* 111 AD2d 860; *People v Crapo,* 103 AD2d 943, *affd* 65 NY2d 663; 1 LaFave, Search and Seizure § 2.3 [c], at 390). "The general public could peer into the interior of [defendant's] automobile from any number of angles * * *. There is no legitimate expectation of privacy * * * shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers" *(Texas v Brown, supra,* at 740; *see also, People v Class, supra).*

In accordance with the foregoing, the officer in this case had no obligation to obtain a warrant prior to his looking into the defendant's car. After he had looked into the car and had observed the hypodermic needles, the officer had probable cause to arrest the defendant *(see, e.g., People v Vadnos,* 130 AD2d 528 [observation of defendant in possession of three hypodermic needles gives rise to probable cause to arrest]).

The seizure of the contraband, after the defendant's legal arrest, can thus be justified either under the "automobile" or under the "plain view" exception to the warrant requirement (*see, e.g., People v Blasich,* 73 NY2d 673; *People v Belton,* 55 NY2d 49; *see also, People v Ricciardi,* 149 AD2d 742).

The Supreme Court, which apparently considered the "plain view" exception only, effectively held that, under New York Constitutional law, this exception to the warrant requirement may be applied only where a police officer accidentally, rather than "purposefully" focuses his vision in a particular direction (*see, People v Manganaro,* 148 Misc 2d 616, 621, *supra).* This holding reflects a misunderstanding of the "inadvertency" aspect of the "plain view" doctrine, which was originally espoused in the nonbinding plurality opinion of the United States Supreme Court in *Coolidge v New Hampshire* (403 US 443) but which was not essential to the holding of that case, and which has since been expressly repudiated by that court (*see, Horton v California,* 496 US 128). In any event, the concept of inadvertence enunciated in *Coolidge v New Hampshire (supra)* relates not to whether the officer's gaze has been directed to a particular place by accident rather than by design, but rather to whether, in looking to a particular place (whether it be by accident or by design), the officer discovers that which he was actually seeking. The discovery of contraband by an officer who "purposefully" looks inside a closet, a drawer, or a car, may, in other words, be considered inadvertent, provided that he was not actually aware that that particular item of contraband or evidence would be found in that particular place (*see, Coolidge v New Hampshire, supra,* at 470; *Texas v Brown,* 460 US 730, 737, *supra; Horton v California, supra).*

We therefore conclude that the Supreme Court erred in holding that any "purposeful" (as opposed to accidental) glance by a police officer into a parked motor vehicle constitutes an invasion of privacy or a search which requires some level of suspicion. We see no reason why the police officers who patrol the streets may not legally do that which any passerby may do, i.e., look into those places which are essentially open to public view, and in which no one can assert any legitimate expectation of privacy. Thompson, J. P., Bracken, Rosenblatt and O'Brien, JJ., concur.