[623 NYS2d 216]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TYRONE LAWS, Respondent.

First Department, February 28, 1995

318

### APPEARANCES OF COUNSEL

*Gina D'Angelica* of counsel, Bronx *(Daniel S. Ratner* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for appellant.

### OPINION OF THE COURT

SULLIVAN, J. P.

The People appeal from the grant, after a hearing at which the following evidence was adduced, of defendant's motion to suppress physical evidence and statements.

At approximately 12:55 A.M. on June 3, 1992, Police Officer Byrne, in plain clothes and assigned to the Street Crime Unit of the 44th Precinct, was driving southbound on Third Avenue in the Bronx in an unmarked police car with his partner, Officer Gallo, when he observed a gray four-door Sunbird sedan with Connecticut license plates double-parked south of 143rd Street on the northbound side of the street. There were no other similarly double-parked cars. Officer Byrne saw defendant, who was standing on the passenger side of the car by the open rear door, remove something from his waistband, lean over and place it in the rear passenger compartment. Officer Byrne could not tell what the object was but, based on his extensive experience as a police officer and member of the Street Crime Unit and defendant's movements, he believed it to be a gun. Byrne made a U-turn and pulled up behind the Sunbird, which had two occupants, both women, seated in the front. As the police vehicle came to a stop, defendant closed the door of the Sunbird and walked away.

Officer Byrne exited his car, stopped defendant near the rear of the Sunbird, identified himself as a police officer and, while Officer Gallo detained defendant, approached the car. On the floor of the rear compartment, he observed an empty shoe box and a 9-millimeter semiautomatic handgun, the barrel of which was partially covered by the shoe box. Byrne

recovered the gun, which had six rounds of ammunition in the magazine and one in the chamber. At that point, defendant told Byrne that he "would take the weight" for the gun. After Byrne explained to defendant that if the gun was not his, he should not take the responsibility for it, defendant admitted that he owned the gun.

Defendant called two witnesses, one, a neighbor and friend of defendant's family, who testified that defendant was on the sidewalk talking to his brother when two men, whom she later learned were police officers, arrived. After speaking to the occupants of the double-parked car and removing them from the vehicle, one of the officers reached into the car and removed something. The two officers then arrested defendant. Ms. Gallo, a Mr. Softee ice cream vendor and friend of defendant, who had occasionally worked with him on her route, also testified on defendant's behalf. She stated that she was sitting in the driver's seat of her automobile, the Sunbird, waiting for defendant, when she saw two plain-clothes officers approach him as he stood on the sidewalk talking to his brother, and, apparently believing defendant to be a robbery suspect, ask him for identification. The officers then searched the front and back of the Sunbird and recovered a gun, which defendant denied owning. Ms. Gallo did not know who owned the gun or how it found its way into her car. Defendant had not been in the Sunbird before the police approached.

In its decision granting suppression, the court found that defendant had standing to contest a search of "the vehicle belonging to [his] partner." More specifically, the court found that irrespective of whether defendant had been in the Sunbird that evening he could be considered a licensee with standing to contest a search of a car to which he had access. The court also found that even if defendant was on the sidewalk rather than near the car when he was first observed the officers were not entitled to stop him as a result of seeing him "reach in a waistband, bend over a car, close the door and walk away" and that the officers acted on a mere hunch. In its subsequently entered written order, the court suppressed both the gun and, without any discussion whatever, defendant's statements. We modify to deny suppression of the gun and remand the matter for further proceedings.

■ In reaching its conclusions, the court made several crucial mistakes, the first of which was its rejection of the People's lack of standing argument. Standing to challenge a search on constitutional grounds is no longer, as was the

holding of *Jones v United States* (362 US 257, 264, 267), automatic, arising merely by virtue of the fact that the same possession required to establish standing is an essential element of the crime charged, or a function of a person's legitimate presence in premises where a search occurs. *(Rakas v Illinois,* 439 US 128, 135, *reh denied* 439 US 1122; *People v Rodriguez,* 69 NY2d 159, 161.) The right to be secure against unreasonable searches and seizures is a personal one. *(Alderman v United States,* 394 US 165, *reh denied sub nom. Ivanov v United States,* 394 US 939; *Rakas v Illinois, supra; People v Ponder,* 54 NY2d 160.)

In *Rakas (supra,* at 142-143), the Supreme Court defined the scope of the interest protected by the Fourth Amendment as a legitimate expectation of privacy, one that society is prepared to recognize as reasonable. In interpreting the New York State Constitution, the Court of Appeals has held that its protections against illegal searches and seizures apply only to those with standing and that New York provides no broader standing rule than that allowed under the Federal constitutional standard. *(People v Rodriguez,* 69 NY2d, *supra,* at 162.) In assessing an assertion of a legitimate expectancy of privacy, a court should consider such factors as whether the person took precautions to maintain privacy, the manner in which he or she used the premises and whether he or she had the right to exclude other persons from the premises or property searched. *(Supra,* at 162.)

Our review of the record shows that defendant failed to demonstrate that he had a legitimate expectancy of privacy in the automobile into which he placed the 9-millimeter handgun. He did not own the car; indeed, he was never seen inside of it. The only evidence even remotely touching on the subject came from Ms. Gallo, defendant's witness, who testified that she and defendant were partners in a Mr. Softee ice cream truck route in Queens and that she often saw him after work. Assuming that to be the case, such a relationship would not, in and by itself, confer standing with respect to Ms. Gallo's car, occupied by herself and another woman. There was no evidence that defendant and Ms. Gallo used the car for business purposes on the night of his arrest or at any time or, as found by the hearing court, that he was a licensee of the vehicle. There was no evidence, nor did defendant argue, that he had permission to use the car. Thus, the court's finding that defendant's rather generalized business relationship with Ms. Gallo, the car's owner, gave him a legitimate expectancy

of privacy in her car is unjustified on this record. Since defendant failed to establish any nexus between himself and the car from which the gun was recovered, he lacks standing to challenge the gun's seizure.* *(See, e.g., People v Ortiz,* 83 NY2d 840; *People v Herrin,* 187 AD2d 670, *lv denied* 81 NY2d 887.)

■ Nor is defendant, even without standing to contest the search of the car on the basis of a legitimate expectation of privacy, entitled, as the hearing court found, to suppression of the gun on the ground that its recovery was tainted by defendant's brief detention. Although Officer Byrne's observations did not give rise to a reasonable suspicion that defendant was engaged in criminal activity *(see, People v Hollman,* 79 NY2d 181, 184-185) and his detention was therefore unjustified, the recovery of the gun was proper since it was derived from a source independent of the detention and was attenuated from any illegal activity. Thus, the gun was not the "fruit of the illegal detention" and should not have been suppressed. *(People v Rogers,* 52 NY2d 527, 533, *cert denied* 454 US 898, *reh denied* 459 US 898; *see, People v Pleasant,* 76 AD2d 244, *affd* 54 NY2d 972, *cert denied* 455 US 924.)

When Officer Byrne walked over to the car he observed a gun on the floor of the rear passenger compartment. The stop of defendant in no way aided Officer Byrne either in the discovery or recovery of the gun, which would obviously have been recovered even if defendant had not been detained. No evidence was recovered from defendant's person. Nor did defendant provide any information as to the gun's whereabouts. Defendant's brief detention was intended merely to hold him "and not to provide the police with an opportunity to discover evidence which was not otherwise available [citation omitted]." *(People v Rogers, supra,* at 534; *see, People v Butler,* 184 AD2d 305, *lv denied* 80 NY2d 927.)

■ Finally, it should be noted, the gun's recovery was the product of a plain view observation. Under the plain view doctrine, if the sight of the object provides probable cause to believe that it is the instrumentality of a crime, a warrantless seizure is justified if the police view the object from a lawful vantage point, the police access to the object is lawful and the

---

* The concurrence confuses standing with possession. It does not follow that because one has not "discarded" an object he has a privacy interest in the area from which the object is recovered. In essence, the concurrence draws an inference of standing as to the inside of the car from the mere nonabandonment of the gun, a notion soundly rejected by *Rakas (supra).*

incriminating nature of the object is immediately apparent. *(People v Diaz,* 81 NY2d 106, 110.) As this record shows, Officer Byrne approached a double-parked automobile, as he had a right to do, and, from outside the vehicle, without entering it or even opening a door, observed a gun, in open view, with only a portion of its four-inch barrel obscured, on the floor of the rear compartment. Thus, the observation was from a lawful vantage point. *(See, People v Rodriguez,* 165 AD2d 705, *lv denied* 76 NY2d 1024; *People v Manganaro,* 176 AD2d 354, *lv denied* 79 NY2d 860.) "There is no legitimate expectation of privacy [citations omitted] shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *(Texas v Brown,* 460 US 730, 740; *see also, People v Class,* 63 NY2d 491, 494-495; *People v Manganaro, supra,* at 355.) By viewing the gun, the incriminating nature of which was manifest, Officer Byrne could, given the exigency, i.e., its location in plain view within an automobile, seize it without the necessity of a warrant. *(See, People v Manganaro, supra,* at 356.) Thus, the gun was improperly suppressed.

■ The suppression of defendant's statements, however, should be upheld. According to Officer Byrne's testimony, defendant's statements "to the effect that he would take the weight for the gun" and that he owned the gun were made at the time the gun was recovered. Since it cannot be said that the statements were " 'the product of a source independent of the defendant's detention' " or that the illegal detention was sufficiently attenuated so as to render the statements admissible *(People v Hunt,* 155 AD2d 957, *lv denied* 75 NY2d 814; *see also, People v Rogers,* 52 NY2d 527, 533, *supra),* these statements must be suppressed as the fruit of the illegal detention.

Accordingly, the order of the Supreme Court, Bronx County (Harold Silverman, J.), entered December 1, 1993, which, after a hearing, granted defendant's motion to suppress physical evidence and statements, should be modified, on the law and on the facts, to deny the motion to suppress physical evidence and, except as thus modified, affirmed, and the matter remanded for further proceedings.

KUPFERMAN, J. (concurring). I concur in the result, but differ with the Court only on the question of standing.

The basis for the intervention of the police was their assumption that the defendant placed a gun in the automobile.

He was not discarding it. He, therefore, had a reasonable expectation that his privacy interest regarding the gun would be maintained.

ELLERIN and WILLIAMS, JJ., concur with SULLIVAN, J. P.; KUPFERMAN, J., concurs in a separate opinion.

Order, Supreme Court, Bronx County, entered December 1, 1993, modified, on the law and the facts, to deny the motion to suppress physical evidence and, except as thus modified, affirmed, and the matter remanded for further proceedings.