Luciano, J.,
dissents and votes to affirm in the following memorandum: I respectfully dissent from the determination of the majority and would vote to affirm the order suppressing the evidence garnered from the inspection of the defendant’s vehicle.
It is noted that the majority has not based its determination that there was a proper and lawful search on a conclusion that the defendant had consented thereto. Since it appears that the defendant was informed by police officers that his vehicle was going to be impounded, and was afforded no opportunity to consent to or withhold consent to the impounding of his vehicle, his failure to have protested it can hardly be characterized as consent upon which the search may be upheld.
It is without dispute that the inspection of the brakes of the defendant’s pickup truck was done in technical compliance with the provisions of Vehicle and Traffic Law § 603 (1). Such compliance, however, does not validate the inspection, which was a search (cf., People v Class, 63 NY2d 491), if the statute and police conduct did not comport with constitutional principles. (Cf., Cooper v California, 386 US 58, 61 [Black, J., "But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment”].)
*367 Of vital significance to my conclusion herein is the fact that the New York Court of Appeals has unequivocally held that the expectation of privacy in an automobile under the New York State Constitution (NY Const, art I, § 12) is greater than that under the United States Constitution. (People v Class, 67 NY2d 431, on rearg following remand from 475 US 106, revg 63 NY2d 491, supra.) This expectation of privacy is greater than that employed as the applicable standard by the Supreme Judicial Court of Massachusetts in Commonwealth v Mamacos (409 Mass 635, 568 NE2d 1139) upon which the majority has relied.
In its first opinion in People v Class (63 NY2d 491, supra), which involved the right of a police officer to examine an automobile to locate a vehicle identification number (VIN), the Court of Appeals stated: "VIN inspections typically involve opening a car door to locate the VIN on the doorpost, opening the hood to locate the VIN on the engine, or looking for the hidden VIN in obscure parts of an automobile” (supra, 63 NY2d, at 494). These acts can in no way be equated with removing or dismantling a part of a motor vehicle to inspect same.
The Court of Appeals noted: "One has no legitimate expectation of privacy in locations in a car which are observable by passersby” (supra, 63 NY2d, at 494). Distinguishing hidden areas not observable by passersby the Court of Appeals explained further: "The government intrusion here, Officer McNamee’s opening the door and reaching inside, was undertaken to obtain information and it exposed these hidden areas. It therefore constituted a search” (supra, 63 NY2d, at 495).
A conclusion consistent with this principle was reached in People v Campbell (121 AD2d 121, lv denied 69 NY2d 878) in which the Appellate Division, First Department, concluded that the expectation of privacy could extend to the engine compartment of an automobile under its hood.
It would, therefore, be improper to conclude that under New York State constitutional principles the expectation of privacy may never extend to the areas of a car housing which conceals the braking mechanism. Since police action in examining the brakes involves an intrusion, such as removing or dismantling pieces, parts or sections of the vehicle to expose areas not readily visible, the constitutional prohibition against unreasonable searches and seizures extends to an automobile’s braking mechanism.
Thus, notwithstanding that the search involved an automobile there was no automatic exemption from the requirement of a warrant.
*368 A preliminary review of a vast array of cases upholding warrantless searches and seizures of motor vehicles or their contents might lead to the unwarranted conclusion that a per se exception to the general rule proscribing such searches and seizures applies to motor vehicles (see, 33 NY Jur 2d, Criminal Law, § 1829, citing People v Belton, 55 NY2d 49). Such exception is said to be based upon a diminished expectation of privacy in an automobile and the inherent mobility of a motor vehicle (e.g., People v Belton, supra, at 53). The Court of Appeals has instructed, "[w]here, however, there is no haste or urgency in the investigation, the automobile subexception does not apply” (People v Singleteary, 35 NY2d 528, 533).
It is crucially significant in this regard that the search of the pickup’s brakes did not occur until two days after impoundment, thus clearly demonstrating that no urgency existed to justify a warrantless search.
Similar principles underlie the following discussion by the Appellate Division, Second Department, in People v Martin (141 AD2d 854, 855, lv denied 73 NY2d 857): "While we agree with the court’s finding that the initial plain-view observation of the defendant’s automobile on August 15, 1984, in a Bronx parking lot, and the registration check derived therefrom, was proper (see, Coolidge v New Hampshire, 403 US 443, reh denied 404 US 874), the search of the vehicle’s glove compartment and the car’s impoundment without a warrant two days later and four days prior to the defendant’s arrest was unlawful since the investigating detectives had ample opportunity to secure a warrant. Once the police possessed 'a reasonable belief that the vehicle was, in some way, associated with the crime and that a search of the vehicle would "produce the fruits, instrumentalities, contraband or evidence” of the crime’ (People v Clark, 45 NY2d 432, 438, rearg denied 45 NY2d 839, quoting from People v Lewis, 26 NY2d 547, 552), they could have conducted a warrantless search and seizure of the vehicle. The detectives could not, however, return to the vehicle two days later and search and seize the vehicle without a warrant (see, 3 LaFave, Search and Seizure § 7.2 [b], at 40-41 [2d ed]). Accordingly, pictures of and testimony concerning the impoundment of the car and the jewelry located therein, later identified by one of the robbery victims, should have been suppressed.”
The critical factor in support of the conclusion that a warrant was required was the passage of time and not the fact that the vehicle was impounded and in police custody, since *369 impoundment alone would not give rise to the requirement of a warrant (see, People v Blasich, 73 NY2d 673, 681). In that case the Court of Appeals stated: "Finally, that the search of the car was conducted after defendant was taken to the Port Authority Police Station and the vehicle was impounded does not compel a different result. The justifications for a warrant-less search conducted upon probable cause pursuant to the automobile exception do not dissipate merely because the vehicle has been placed in the control of the police (People v Milerson, 51 NY2d 919, 921) and the exception is equally applicable whether the search is conducted at the time and place where the automobile was stopped or whether, instead, the vehicle was impounded and searched after removal to the police station (People v Orlando, 56 NY2d 441, 446). Here, where the search was reasonably close in time and place to the point of arrest, we conclude that there was no requirement that the police further delay the search to obtain a warrant (People v Milerson, supra, at 921).”
In the present case the passage of two days was not so close a period of time to the initial impounding of the vehicle so as to mandate a finding that the act of obtaining a warrant would have caused unreasonable delay inhibiting the efficient investigation of the underlying accident.
In this regard guidelines set by the United States Supreme Court in Michigan v Tyler (436 US 499) are instructive. That case involved the right of officials at a fire scene to search for evidence of arson. Summarizing the conclusions of the majority of the Supreme Court, Justice Potter Stewart wrote: "[W]e hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches * * * Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.” (436 US, at 511-512.)
That case and the quoted rules should be, by analogy, guiding principles in the case presently under consideration.
Police officers who have secured control of a motor vehicle after a fatal accident may examine the vehicle without a war *370 rant in aid of a determination of a cause of the accident and the preparation of the report thereof to the Commissioner of Motor Vehicles, since taking the time to secure a warrant could allow for changing conditions inhibiting an effective investigation. Further, such investigation and report are required irrespective of whether the accident has any criminal implications, and in those instances in which the only purpose is to ensure prompt, orderly and accurate information-gathering, no basis for a criminal warrant would exist.
The passage of two days qualifies as a reasonable period of time requiring a warrant issued in accordance with procedures governing administrative searches as a predicate for a further search of a motor vehicle. Once government officials have reasonable cause to believe evidence of criminal conduct may exist, it should be the rule that a further search may be permitted only pursuant to a warrant issued upon a traditional showing of probable or reasonable cause applicable to searches for evidence of a crime.
Since neither an administrative nor a criminal search warrant was obtained, the question of which warrant would have been appropriate in this case need not be resolved.
Nevertheless, it is noteworthy that Detective Reich indicated that he was looking for evidence of a greater crime than operating a vehicle with inadequate brakes. In considering whether a suppression motion should have been granted, in People v Solano (148 AD2d 761, 762) the Appellate Division, Second Department, concluded that the search of a vehicle then under review could not be categorized as an inventory search, because "the detective admitted that the search at the 109th Precinct was not an inventory search, but he testified that the search of the car, including the search of the packages, was motivated by his desire to discover potentially incriminating evidence or contraband.” Similarily, if a factual determination could be made on the present record that Detective Reich had undertaken a search of the vehicle’s braking mechanism seeking to find evidence of a crime, the directives of Vehicle and Traffic Law § 603 (1) providing for prompt, orderly information-gathering relative to automobile accidents should not be permitted to be used as a convenient means to circumvent the constitutional mandates applicable to searches for criminal evidence. Vehicle and Traffic Law § 603 (1) should not be interpreted as providing a moratorium or a period of suspension of constitutional safeguards against unlawful searches and seizures after every serious automobile accident.
*371 Added to the mix is the fact that Detective Reich was aware of a previous charge of operating a vehicle with bad brakes against the defendant, which charge was dismissed, coupled with his belief that the defendant was a mechanic. This knowledge likely increased the detective’s suspicion that the defendant may have knowingly operated the vehicle with defective brakes rendering the search something more than an information-gathering process to allow the facts to be reported to the Commissioner of Motor Vehicles.
In other circumstances the question of whether the suppression motion should be granted would require a further hearing regarding the knowledge and purpose of the police in undertaking the investigation. Since the fact that the search was delayed for two days is not disputed, however, as is the lack of a warrant, the record, without the need for further findings, mandates that I vote to affirm the order appealed.
Stark, J. P., and Ingrassia, J., concur; Luciano, J., dissents in a separate memorandum opinion.